## Arbour v. Pittsburg Produce Trade Association, Appellant.

*Corporations—Trade associations—Black listing—Equity—Jurisdiction—Act of June 19, 1871, P. L. 1360.*

1. A court of equity has jurisdiction under the Act of June 19, 1871, P. L. 1360, to enjoin a trade association organized as a corporation of the first class under the Act of April 29, 1874, P. L. 73, from enforcing by-laws by which the members of the association were held bound to refuse to sell "for spot cash" to any persons indebted to members of the association, and by which provision was made for an arbitration committee consisting only of members to pass upon the validity of the claims of members against persons to whom they had sold goods, and whom they had blacklisted as delinquent.

2. The visitorial or superintending power of the state over corporations created by the legislature will always be exercised, in proper cases, through the medium of the courts of the state, to keep such corporations within the limits of their lawful powers, and to correct and punish abuses of their franchises.

Argued April 22, 1910.    Appeal, No. 112, April T., 1910, by defendants, from decree of C. P. No. 2, Allegheny Co., Oct. T., 1907, No. 373, on bill in equity in case of W. H. Arbour et al. v. Pittsburg Produce Trade Association et al.    Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.    Affirmed.

Bill in equity for an injunction.

MILLER, J., specially presiding, found the facts to be as follows:

### FINDINGS OF FACT.

1. The plaintiff is a retail produce dealer in the city of Pittsburg, regularly supplying a well-established trade, with his place of business in the Liberty market.    His business is buying and selling fruit, vegetables, and other kindred products.    He obtains his daily supplies from wholesale produce and commission dealers in the city of Pittsburg, a large number of whom are members of the defendant association.

2. The defendant corporation, composed of the partners or firms mentioned in the pleadings, was chartered by this court under the general corporation act of April 29, 1874.    Its purpose, as stated, is as follows:

"To encourage and protect trade and commerce, by adjusting differences among the members; spreading reliable commercial intelligence among them; protecting them against unjust and unlawful exactions by carriers and others; furnishing information to members to enable them to regulate credits and collect debts, and advancing in every lawful way, the interest of the business in which the members are engaged."

3. Among the by-laws of the defendant association are the following:

Part of sec. 4 of art. VI is as follows:

"Upon receipt of reports from any member of the Association of persons indebted to such member who have not paid their accounts when due, he (the Secretary) shall, unless as provided in Sec. 5 of this Article, tabulate

the names of such debtors and cause to be furnished a
sufficient number of such lists of debtors to supply each
member of the Association with a copy thereof, which
list he shall cause to be delivered in a sealed envelope to
all members of the Association on the day on which the
report was received by him.  He shall immediately upon
receipt of notice from the different members of the As-
sociation who have reported any person, partnership or
body corporate as debtor that such debtor has 'paid,'
remove such name or names from the list of debtors in
such manner as the collection Committee may direct and
give notice thereof to all members."

Section 1 of art. VIII is as follows:

"The President at the annual meeting shall elect from
the Board of Managers and appoint the following com-
mittees, which committees shall hold office for one
year. . . . Second: An Arbitration Committee of five
members."

Section 3 of art. VIII is as follows:

"The arbitration committee shall be chosen so as to
represent, if possible, the various commercial interests of
the membership.  They shall have all the powers and be
subject to all the requirements of arbitrators in the trial
of causes submitted to them, and such decisions as they
may render, or such awards as they may make, shall be
final, and not subject to appeal."

Paragraph second of sec. 14, art. XIV, is as follows:

"In the event of the creditor and debtor not being able
to make adjustment, the debtor shall pay to the creditor
before the expiration of the time fixed for payment in
Section 1 of this Article, the amount of the bill rendered,
less the amount actually in dispute, or be reported by
the creditor as a delinquent debtor.  Upon said payment
being made, the particular matter in dispute and the
amount thereof shall be submitted at once by the cred-
itor and debtor to the Arbitration Committee for adju-
dication, which committee shall give judgment thereon
before the expiration of Tuesday of the succeeding week.

Should the judgment be against the debtor, he shall pay the disputed amount to the creditor before the expiration of the succeeding Saturday at twelve o'clock, noon, or be reported as a delinquent debtor."

Section 12 of art. XIV is as follows:

"The payment of an account due any member of the Association by a debtor, shall not entitle the member to sell goods on credit or otherwise to said debtor, until the member has reported the account 'paid' and has received from the Secretary notice that said debtor has been removed from the debtor list."

Section 6 of art. XIV is as follows:

"All members are held bound that they or their firm shall refuse to sell on credit, or for spot cash to any person or firm reported as a debtor until duly notified by the Secretary that such party's name has been removed from the list. The penalty for each violation shall be the same as Sections 2 and 3 of this article."

Section 1 of art. XIV is as follows:

"All bills for goods sold on credit shall be due and payable on Monday following the sale, and unless paid on or before twelve o'clock noon on the following Saturday, members shall report to the Secretary by two o'clock the same day, the name and address of each party, date and amount of each bill."

All of said by-laws are made part of these findings of fact.

4. Out of the total number of retail produce merchants and others dealing with the different members of this corporation, an average of 200 are delinquent weekly.

From the number of special complaints set forth in the bill and the testimony, the fact is found that the plaintiff and others were wrongfully placed on the defendants' delinquent list for debts alleged to be due, and that credit or the purchase of goods for cash tendered was refused them by other members until they paid the alleged debt a second time, causing inconvenience and loss, for which these parties have brought suits for damages, now pending in the common pleas court.

5. In some of the other cases disputes as to the amounts due caused retail customers to be placed on the delinquent list, during which time they were refused the sale of goods for cash or on credit from any member of the association, with inconvenience and loss to them.

6. In some instances where disputes arose delinquent purchasers agreed to submit their differences to the arbitration committee, but were obliged to stipulate that they would be bound thereby, in which case their names were removed from the delinquent lists. When they refused to be bound by the pending arbitration their names remained on the delinquent list and they were refused the purchase of goods even though they tendered cash therefor.

7. While there are many large receivers of produce by sale or commission not members of the defendant association from whom retail dealers on the delinquent lists could purchase, it happened and can happen that the only produce or article wanted by a delinquent retail dealer at any particular time is held only by members of that defendant association. Under these circumstances such delinquent, or alleged delinquent, debtor was unable to obtain the particular goods he desired, although tendering cash therefor, with a resultant inconvenience and loss in his business.

8. In one instance the purchaser paid for in cash and placed in his wagon certain goods or merchandise; later his goods were removed by the seller, his money returned, and he was refused his goods, because his name appeared on the delinquent list—this though he claimed he owed nothing to the alleged creditor. He finally paid the alleged delinquency a second time for the purpose of being restored to credit upon the defendant corporation's delinquent list.

The court entered the following decree:

And now, to wit, April 16, 1909, this cause came on to be heard and at this term upon bill, answer and testimony and was argued by counsel, and, upon considera-

tion thereof, it is ordered adjudged, and decreed as follows, viz.:

a. The words, "or for spot cash," in sec. 6 of art. XIV of the by-laws of the defendant, The Pittsburg Produce Trade Association, as shown in the bill be stricken out.

b. Section 12, art. XIV, of the said by-laws, reading as follows, to-wit: "The payment of an account due any member of the Association by a debtor, shall not entitle the member to sell goods on credit or otherwise to said debtor until the member has reported the account 'paid' and has received from the Secretary notice that said debtor has been removed from the debtor list" be and the same is declared null and void in so far as the same relates to a sale for spot cash.

c. Sections 1 and 3, art. VIII, and paragraph 2, sec. 14 of art. XIV of said by-laws providing for the appointment of an arbitration committee with the powers and duties as therein set forth are hereby declared null and void.

d. The said defendant, The Pittsburg Produce Trade Association, and, all and singular, its members, the defendants, their officers, managers, agents, servants and employees be and they are hereby enjoined and perpetually restrained from adopting, maintaining, and enforcing the aforesaid provisions of the by-laws as above decreed.

f. The said defendants shall pay the costs so far accrued.

*Error assigned* was decree of the court.

*John P. Hunter,* of *Lyon & Hunter,* with him *Seymour, Patterson & Siebeneck,* for appellants.—The plaintiff, or plaintiffs, had no standing to inquire into the validity of the by-law in question under the act of June 19, 1871: Windsor Glass Co. v. Carnegie Co., 204 Pa. 459; Larimer, etc., St. Ry. Co. v. Ry. Co., 137 Pa. 533; Sparhawk v. Ry. Co., 54 Pa. 401; Cox's App., 11 W. N. C. 571; Wilson v. Strawbridge, 4 W. N. C. 35; Cox v. R. R. Co.,

10 W. N. C. 552; Seitz v. Traction Co., 5 Pa. C. C. Rep. 469.

The by-laws controlling cash payment and arbitration were not in excess of the powers granted in the charter: Watt's App., 78 Pa. 370; Malone v. Lancaster Gas Light, etc., Co., 182 Pa. 309; Howley v. R. R. Co., 213 Pa. 36; Folk v. Loan Assn., 214 Pa. 529.

An agreement between a minority of commission produce dealers that neither would sell goods to another person in business so long as such person failed to pay an account due and owing to one, is not an illegal combination which equity will restrain: Nester v. Brewing Co., 161 Pa. 473; Schulten v. Brewing Co., 16 Ky. L. R. 442; Brewster v. Miller, 101 Ky. 368; Delz v. Winfree, 25 S. W. Repr. 50; Mogul Steamship Co. v. McGregor, L. R. 23 Q. B. D. 598; Aikens v. Wisconsin, 195 U. S. 194; Macauley Bros. v. Tierney, 19 R. I. 255; Continental Ins. Co. v. Fire Underwriters, 67 Fed. Repr. 310; Worthington v. Waring, 157 Mass. 421; Anderson v. U. S., 171 U. S. 604; Park & Sons Co. v. National Wholesale Druggists' Assn., 175 N. Y. 1; Whitwell v. Continental Tobacco Co., 125 Fed. Repr. 454; Hartman v. John D. Park & Sons Co., 145 Fed. Repr. 358; American Live Stock Commission Co. v. Live Stock Exchange, 143 Ill. 210; Beechley v. Mulville, 102 Iowa, 602; Cote v. Murphy, 159 Pa. 420; Bowen v. Matheson, 96 Mass. 499; Bohn Mfg. Co. v. Hollis, 54 Minn. 223.

*A. E. Anderson,* with him *H. B. Wassell, Allan B. Angney, Paul S. Ache* and *W. S. Maxey,* for appellees.—The defendant association was chartered by the court below, and, therefore, such court surely would have jurisdiction to correct any abuses attempted to be committed by its creature: Purvis v. United Brotherhood, 214 Pa. 348; Donovan v. Penna. Co., 199 U. S. 279.

The combination was unlawful: Buck Stove Range Co. v. American Federation of Labor et al. (D. C.), Law Reporter of Dec. 20, 1907.

OPINION BY ORLADY, J., October 10, 1910:

While there are a number of defendants named in this bill in equity as it was originally filed, the final decree, as made by the court below, affects only the Pittsburg Produce Trade Association, which is a corporation of the first class, incorporated by an order of the court of common pleas, No. 2, of Allegheny county, its purposes as set out in its application for incorporation being "to encourage and protect trade and commerce by adjusting differences among the members; spreading reliable commercial intelligence among them; protecting them against unjust exactions by carriers and others; furnishing information to members to enable them to regulate credits and collect debts, and advancing in every lawful way the interest of the business in which the members are engaged"; and its members who are defendants, their officers, managers, agents, servants and employees, who are perpetually restrained from enforcing certain designated by-laws, which govern the management of its affairs and are set out at length in the bill.

The by-laws governing the management of its affairs are set out at length and the ones which are specially for our consideration relate to art. XIV, sec. 6. "Withholding credit," by which all members are held bound that they or their firm shall refuse to sell on credit or for spot cash to any person or firm reported as a debtor until duly notified by the secretary that such party's name has been removed from the list; and secs. 1 and 3 of art. VIII, by which, the president is directed to appoint an arbitration committee of five members, so as to represent the various commercial interests of the membership, and who shall have all the powers and be subject to all the requirements of arbitrators in the trial of causes submitted to them, and such decisions as they may render, or such awards as they may make, shall be final and conclusive and not subject to appeal.

The plaintiff was a retail produce dealer at the Liberty market in Pittsburg, and had a well-established and

growing business, which assured to him reasonable gains and profits. This bill in equity resulted from a number of disputes and controversies between the plaintiff and other dealers similarly circumstanced with the defendant association, owing to the enforcement of its by-laws. As stated by the trial judge: "The bill in substance alleges that the defendant corporation, in the conduct of its business under its charter and by-laws, constitutes a combination and monopoly in restraint of trade; that its methods are an illegal violation of its charter; that they are unlawful, unreasonable, arbitrary and oppressive," and the question presented by the bill, answer and testimony was narrowed to the one question whether the facts found by the court established the plaintiff's contention that this by-law was unreasonable, in restraint of trade, and oppressive, and the method of arbitration provided for by the by-laws was unfair and illegal.

The court held that the by-law so far as it related to a sale "for spot cash," and the provision relating to the power of, and the effect to be given to the decisions of, the arbitration committee were unreasonable, oppressive and not within the charter power, and entered a decree accordingly. The findings of fact and law of the learned trial judge are exhaustive, and the pertinent authorities are marshaled by him so as fully to warrant the conclusion he reached and the decree he entered.

These by-laws were so interpreted and administered by this association that it was not a matter of any importance whether a customer of the members of the association was a person of property or not; whether he was in excellent local credit or a bankrupt; whether he was a large or an insignificant dealer; whether the claim or demand of a member of the association against him was real or fanciful, just or unjust.

The sole test of the right to purchase from any member of the association turned on the one question, whether any member of the association asserted any claim against him, and the merit of the claim and validity of the de-

fense to it was to be determined by a self-appointed tribunal selected from the members of the association; in which the customer had no right of selection or challenge, and whose summary decision arbitrarily bound him. This is at times tolerated in unincorporated associations among the members or parties to it because they all are voluntary parties to that contract, and they are held to be bound by the contract they make, but in this case the plaintiff was not a member, and his business standing and credit with other dealers, as well as his lawful claims, demands and defenses were disposed of without regard to the forms prescribed by our legal procedure.

One of the active parties in the association stated with commercial frankness, that in order to do business with members, the by-law forces them to pay all accounts to all the other members, and that the members could not accept even cash from a prospective purchaser who was on the black list, because the members were subject to the penalties imposed by the by-laws.

The right in the courts to review and supervise the operation and management of corporations is summarized in 1 Thomp. Corp., sec. 1021, and 4 Thomp. Corp., secs. 5472–74, as follows: "The visitorial or superintending power of the state over corporations created by the legislature will always be exercised, in proper cases, through the medium of the courts of the state, to keep those corporations within the limits of their lawful powers, and to correct and punish abuses of their franchises. Every corporation of the state, whether public or private, civil or municipal, is subject to this superintending control, although in its exercise different rules may be applied to different classes of corporations. . . . The chartered rights of a corporation are no more sacred than the rights of a person and property possessed by individuals, and all must alike give way to the legitimate exercise of the police power. All rights whether of individuals or corporations are held subject to this paramount and inalienable sovereign power of the state. . . . Cor-

porations have none of the elements of sovereignty; they cannot go beyond the powers granted to them; they must exercise those powers in a reasonable manner; and whether they have in a given instance, exercised them reasonably or unreasonably, is a question which it is competent for the judicial powers to decide. It is therefore a principle of the common law, running back so far that its origin cannot be found, that the by-laws of a corporation will be set aside by the judicial courts when deemed unreasonable. The principle applies equally to private and public corporations."

In Pennsylvania the rule has been inflexibly enforced that the right to make by-laws is restricted to such as are authorized by the charter or act of incorporation, and they must in every instance be consistent with and not repugnant to the constitution and laws of the state and the United States: Northern Liberties v. Gas Company, 12 Pa. 318; Com. v. Cain, 5 S. & R. 510; Com. v. St. Patrick's Bene. Soc., 2 Binn. 441; s. c., 4 Am. Dec. 453; O'Maley v. Freeport, 96 Pa. 24; and where the facts are undisputed the question whether a by-law is reasonable or whether it ought to be set aside as unreasonable is a question of law for the court and is not to be submitted to a jury: Pittsburg, etc., Ry. Co. v. Lyon, 123 Pa. 140.

By our general equity Act of June 16, 1836, P. L. 784, paragraph 5 of sec. 13 gives to the Supreme Court and the several courts of common pleas, jurisdiction and powers of a court of chancery, so far as relates to "The supervision and control of all corporations other than those of a municipal character, and unincorporated societies or associations and partnerships."

Specific relief is furnished by our Act of June 19, 1871, P. L. 1360, relating to legal proceedings by or against corporations, which provides "that in all proceedings in courts of law or equity in which it is alleged that the private rights of individuals . . . . are injured or invaded by any corporation claiming to have a right or

franchise to do the act from which such injury results, it shall be the duty of the court in which such proceedings are had to examine, inquire, and ascertain whether such corporation does in fact possess the right or franchise to do the act from which such alleged injury to private rights results, and grant appropriate relief, etc."

The Pittsburg Produce Association was incorporated under the general Act of April 29, 1874, P. L. 73, and by sec. 10 of its application for incorporation it averred and prayed that, "The corporation shall have power to adopt by-laws for the regulation of its affairs, not inconsistent either with the constitution and laws of the United States or with the constitution and laws of this commonwealth, and not inconsistent with this charter." This defendant association was chartered by the very court in which this bill is filed, and which had ample jurisdiction to correct or prohibit abuses committed by the subject of its creation.

The act of 1871 was enacted to meet just such a case as is presented by this record, as said in Windsor Glass Co. v. Carnegie Company, 204 Pa. 459, and Packard v. Thiel College, 209 Pa. 349, "The act was intended to enlarge and make clear the rights of individuals to inquire into the charter franchises of corporations when asserted to their individual injury." Whether the alleged wrong is done under an assertion of a charter right or under the enforcement of a by-law enacted under the charter authority is not material. The injury, if one exists, to be remedied is one flowing in direct course from the charter as from a fountain head. When a citizen finds his property or his rights in danger of being injured or invaded by the acts of a corporation, the act of 1871 gives him the right, without waiting for the assistance of the commonwealth, to challenge the authority of the corporation to the possession of the right or franchise to do the act from which such alleged injury to private rights results: Edwards v. Pittsburg Junc. R. R. Co., 215 Pa. 597.

The private rights of individuals referred to in this

act (1871) are the rights of property of some character:
Andel v. Duquesne St. Ry. Co., 219 Pa. 635; and as said
in Purvis v. United Brotherhood, 214 Pa. 348: "The
business of the plaintiffs is property within the meaning
of the law. The defendants sought by concerted action
to injure them in their business, in other words, their
property, in order to coerce them into submission to the
demands of the union (association)."

This record discloses that there is an average of 200
names weekly made delinquent, by this association, re-
sulting in various suits at law for damages, which nec-
essarily causes a multiplicity of actions at law and forms
an added argument for an equitable interpretation of
the charter or by-law right to do the thing of which com-
plaint is here made: Donovan v. Pennsylvania Co., 199
U. S. 279; Bitterman v. Louisville, etc., R. R. Co., 207
U. S. 205; Buck Stove Co. v. Am. Fed. of Labor, Wash.,
D. C., Law Repr. of December 20, 1907; Grenada Lumber
Co. v. Mississippi, U. S. Supreme Court, decided May 2,
1910.

The methods adopted by this association were sub-
stantially those mentioned in McIntyre v. Weinert, 195
Pa. 52, and the effect here was substantially the same as
the one held to be actionable in that case, "The retail
dealers whose names appear on the list are regarded by
the trade generally as dishonest in their business prac-
tices and unworthy of credit, and the members of the
association are prohibited from selling, and refuse to sell
to any person whose name appears on the debtors' list,"
and this was said in a case which fits in all its material
facts the one under consideration. "The plaintiff was a
retail produce dealer and was almost wholly dependent
for his supplies of produce upon the defendant and other
members of the association. He was able and willing to
pay for his supplies and offered to purchase them for
cash from the members of the association."

The decree is affirmed.