## STATE EX REL. HENRY N. BENSON v. LAKEWOOD CEMETERY.[1]

June 12, 1936.

No. 30,925.

[1]Reported in 267 N. W. 510.

*Harry H. Peterson,* Attorney General, *David J. Erickson,* Deputy Attorney General, *Shearer, Byard & Trogner,* and *Kellogg, Morgan, Chase, Carter & Headley,* for appellant (relator below).

*Stinchfield, Mackall, Crounse, McNally & Moore* and *Floyd E. Nelson,* for respondent.

*Carroll & Carroll, amici curiae,* filed a brief on behalf of Crystal Lake Cemetery Association.

JULIUS J. OLSON, JUSTICE.

The state appeals from an adverse judgment. These proceedings in *quo warranto* were brought at the instance of the attorney general. The relief sought was to restrain defendant, a public cemetery association, from engaging in business activities for profit, which activities are claimed to be beyond the powers conferred upon it by our statutes.

In view of the public interest involved and the care and thoroughness evidenced in briefs of counsel for the respective parties, we deem it essential that a rather complete statement of the facts as found by the court be made.

Defendant, Lakewood Cemetery Association, is a corporation organized and existing under the laws of this state pertaining to associations of this type. It was organized August 9, 1871. On April 17, 1924, its articles were amended. At that time its articles, as amended, provided amongst other things as follows:

"to procure and hold or to sell lands or lots exclusively for the purpose of a public cemetery or place of burial for the dead, and to acquire and manage all real and personal property necessary or proper for the establishment, embellishment, care and management of such cemetery; to erect and maintain thereon a suitable chapel and office building, *and other structures that may be essential or proper for carrying out in the best manner the purposes of the association;* also to erect and operate a crematory and other proper means of disposing of the dead; to sell and convey real or personal property acquired by such association, and not needed for any of the purposes aforesaid; to accept and receive, from the owner or

owners thereof, conveyances of any lot or lots in said cemetery in trust for the use and benefit of any person or persons named in the trust conveyances upon such conditions, provisions and covenants as the parties thereto may agree upon, and to establish a permanent care and improvement fund, the income of which shall be devoted to the perpetual maintenance, care and improvement of the cemetery of the association."

Since its original organization defendant has from time to time acquired real estate and personal property, its present real estate holdings amounting to about 240 acres. Upon this acreage it maintains its office and administration building, a chapel, crematory, columbarium, reception vault, greenhouse, salesroom and garage; also a building used partly as a tool house and partly as a place for the manufacture of concrete and wooden burial vaults. Its real estate has been platted into burial lots, and since its organization some 49,700 interments have been made. Over a period of more than 50 years next prior to the commencement of the present suit defendant has continually and without objection from any source made and sold to its lot owners wooden burial boxes or vaults exclusively used in its cemetery. For approximately 50 years defendant caused to be constructed vaults of more substantial type, using such materials as stone, brick, and slate. These were made for its lot owners and for their convenience. Such service was considered as customary and a proper means of disposing of the dead. Over a long period of years some of these vaults were, and to some extent still are, built in the grave prior to the reception of the casket. As far back as 1911 many of these vaults were made of concrete by pouring the same into forms set in the graves. Then in 1923, defendant being of the view that it would be more convenient, expeditious, and less expensive, began to make such concrete vaults upon its property but not at or in the grave. To expedite this method of doing the work and finding it convenient and mutually desirable to all concerned, defendant in 1925 erected a building in a remote and unobtrusive part of its property. This building was and is used in part as a tool house, another part as an incinerator, and

the remaining portion for the making and storing of wooden and concrete vaults. As had been defendant's custom, these vaults were for the exclusive use of its lot owners and only for those thereof desiring such service. A lot owner desiring a vault is at liberty to purchase such from whomsoever he pleases; in fact defendant freely permits the use of burial vaults, whether wooden, steel, concrete, or other suitable material, made by others, in connection with the interment of the dead within or upon its property.

In 1932 interments in defendant's cemetery numbered 946, and of these 570 burial vaults, either concrete or wooden, were manufactured and furnished by defendant. This is fairly representative of the manner and extent to which its work in this line of endeavor is done.

The manufacture and disposal of these vaults, whether of wood or concrete, represents a very small fraction of defendant's total assets. The court found that the total investment applicable to the manufacture of vaults is approximately three-sevenths of one per cent of its assets. It is not engaged in this business for profit, and no portion of the funds used for this purpose comes from its permanent care and improvement fund. The general purpose in furnishing this service is to provide expeditious means for taking proper care of the dead. By this method defendant seeks to, and in fact does, keep down the cost of these vaults and incidental services. The charge made for these vaults is planned to cover the wages of the men and the material going into their construction. The making of these vaults is not carried on by a regular crew employed for that purpose but is done largely during the winter months by two or three part-time employes who during the balance of the year are otherwise engaged in and about the cemetery.

These vaults have not been made or sold for use outside of defendant's property. Only one or two sales were made years ago as an accommodation to a funeral director who was in need of such vaults. On this phase the court found "that the manufacture of both wooden and concrete vaults on the part of the defendant was intended by it, and is so intended by it, to be for use in its own cemetery only."

Paragraphs 11, 12, and 13 of the findings read as follows:

"11. That the defendant operates one of the largest and most complete cemeteries in the state of Minnesota, and, with the exception of a public mausoleum, is equipped to give to those desiring it, complete sepulture service, including chapel, crematory, columbarium, reception vault and greenhouse, as well as the furnishing of the burial vaults when desired. That there are no other cemeteries in the state of Minnesota which are so equipped as to give such complete sepulture service as is the defendant, although some of the larger ones have one or more of the services which Lakewood gives, and several of those located in the Twin City area do either manufacture or sell, or both, wooden and concrete burial vaults for use in the respective cemetery, and have done so for many years.

"12. That the development of sepulture service in its many branches, as furnished by the defendant, is a proper and natural development and growth in connection with the recognized and proper means of disposal of the dead, and all of such services are carried on in keeping with the desires and requirements of the services which the lot owners of the defendant wish to have furnished them in connection with the operation of the cemetery of the defendant, and are proper functions of the defendant and a recognized and proper means of disposal of the dead.

"13. That as the defendant does not require the use by anyone of burial vaults made by it, and permits the use of all other vaults made by other persons, the willingness and ability on the part of Lakewood to render this service is a great convenience to those desiring to avail themselves of it, and is in keeping with the proper operation and maintenance of such a cemetery and a proper exercise of its corporate powers and functions."

Upon these findings the court, as conclusions of law, found that defendant had in no way violated any statutory enactment; that the service rendered by it was being performed properly and within legal limitations and "entirely within its corporate rights and powers." Relator's prayer for relief was "in all respects denied" and judgment ordered for defendant. Thereupon plaintiff moved

for amended findings. This motion was denied and judgment entered. This appeal, as has been said, is from the judgment.

Many errors are assigned, 67 to be exact, but we think the determinative issues may be simmered down to two questions: (1) Is defendant "engaged in business activities for profit"; and (2) are its activities in respect of manufacturing and disposing of wood and concrete burial vaults within the powers conferred upon it under our statute?

When one speaks of "business" the mind naturally contemplates a commercial or industrial establishment or enterprise. That word, however, may have other and different meanings depending upon the use to which it is put. It is also defined as "that which one has to do or should do; that which one may rightfully or justifiably concern himself or meddle with; * * * that which busies, or engages time, attention, or labor, as a principal serious concern or interest." Webster's New International Dictionary (2 ed.) 1935.

It seems clear that in carrying out the purposes and functions of a cemetery of the size and type here involved there is much to do requiring time, labor, planning, and attention. As has been noted in the recital of facts, defendant has extensive property holdings, and there is much for it to do in carrying out the obvious purpose of its creation and continued existence. Its physical assets, including the permanent care and improvement fund, exceed $3,500,000. The amount of property owned and used in and pertaining to the manufacture and sale of burial vaults, that being the sole basis for the present suit, is less than seven-tenths of one per cent of its investments and property holdings. True, defendant derives some gain from doing this work and rendering this service. But that is equally true in respect of the sale of its lots and the furnishing of many services incidental and appropriate to a proper disposal of the dead. We have already enumerated the extensive buildings constructed and operated for these purposes, and no further comment need be made in that regard. Obviously defendant could not own and possess this large acreage and function as a cemetery organization unless it received more for its property and services than

it paid out. In that sense there is gain in everything that it does. This we think proper and appropriate, provided, of course, that a business enterprise in the sense of a commercial or industrial establishment is not brought into being. That obviously cannot be permitted. Defendant cannot, nor has it attempted to, engage in an industrial or business enterprise in the strictly commercial or industrial sense. What it has done and is doing is to furnish and provide suitable services and appropriate means for the final interment of the dead.

As time marches on changes necessarily occur. To begin with, the wooden boxes furnished by defendant were of the rough lumber type. Later, as people's requirements demanded more, more expensive wooden boxes or vaults were prepared and used. Some lot owners desired special and more lasting vaults, and such material as slate, stone, brick, and concrete gradually came into use. We do not understand that complaint is made respecting the pouring of concrete into forms in an open grave. In their brief counsel say: "The coffin or casket is placed therein at the time of burial," reference being had to concrete vault being built in an open grave. "This practice is not in issue in this proceeding."

Defendant found and determined, appropriately, we think, that the mixing of concrete at an open grave, the placing of wooden forms in which to pour the same for appropriate setting and hardening, was an inconvenient and undesirable method to employ. The tools, equipment, and appliances used in this work necessarily presented an unattractive appearance. This method was noisy, unsightly, and cumbersome. As a matter of economy and convenience to defendant, as well as to those who hired its services, the making of concrete vaults since 1925 has been done in a building erected and used for that and the other purposes we have mentioned.

Some complaint is made by plaintiff that defendant charges five dollars as a service charge for supervising the installation of vaults procured from other sources than defendant and points to this as an indication that defendant is thereby placing outside manufacturers at a disadvantage to the extent noted. The court, however, was of opinion that this did not constitute an interference with or handi-

cap to other vault makers. Obviously, some charge had to be made for supervision of the placing of such vaults, no matter from whence they came. It is a service charge. Similar charges are made for many other services rendered by defendant. We can see nothing in this alone justifying plaintiff's complaint.

No one questions the right and authority of defendant to conduct a crematory and to provide suitable receptacles in which to place the ashes of the deceased. What distinction can there be in law or in fact between a cement vault for the reception of a coffin containing the body of the deceased and a place where the small metal box containing the ashes of the deceased is to be placed for its final resting place? Necessarily charges are made for these services. No complaint is made that such charges are improper or an undue burden upon anyone. No lot owner is finding fault nor is anyone having a direct interest in defendant's property complaining.

There is abundant testimony that in an earthen burial the use of a box or vault as an outside container of the casket is a proper means of disposal of the dead and constitutes in fact a part of the interment. Having such on hand for immediate use makes for expeditious and less costly service.

█ It is asserted that the activities with respect to burial vaults made and sold by defendant are beyond the powers conferred by statute.

L. 1911, c. 385, § 1, provided:

"Such corporation may acquire and manage all real and personal property necessary or proper for the establishment, embellishment, care and management of a cemetery, and may construct and operate thereon *a crematory and other proper means of disposing of the dead.*"

L. 1915, c. 304, § 1(9), provided in respect to the internal management of cemetery associations of the type of this defendant that amongst other things they might amend their certificates of incorporation: "By any other lawful provision defining and regulating the powers or business of such association and the powers and duties of its officers, trustees, associates and lot owners."

Presumably by virtue of these later acts, passed after the original incorporation of defendant, it amended its corporate articles in April, 1924. The important features respecting that amendment are found in the first part of this opinion. The following authority contained in the amendment is claimed to be beyond statutory power: "and other structures that may be essential or proper for carrying out in the best manner the purposes of the association." We find no difficulty in coming to the same conclusion as did the trial court, namely, that the defendant by adopting its amended articles thereby became invested with statutory power to do what it is now and since the amendment has been doing.

By 2 Mason Minn. St. 1927, § 7617, wherein reference is made to the use of the permanent care and improvement funds of such associations, it is specifically provided that such funds may be used in "the acquisition of additional land for cemetery purposes for the erection of a chapel, greenhouse, *or other buildings* desirable or necessary for the operation of such cemeteries, or for the building or improvement of roads and avenues in such cemetery."

In a recent case decided by the Pennsylvania Superior Court, Dries v. Evans Cemetery Co. 109 Pa. Super. Ct. 498, 499, 167 A. 237, 238 (*allocatur* refused by the Pennsylvania Supreme Court, see 109 Pa. Super. Ct. p. xxiii), the court decided a question related to the one we are here considering. There the plaintiffs, steel vault manufacturers, sought to enjoin the defendant from enforcing a by-law that "every interment shall be made enclosed in an outer wall of stone, brick or concrete, the actual installation of which shall be made by the employees of the cemetery at cost." The trial court there held that the by-law was fair and reasonable and that [109 Pa. Super. Ct. 501] "the essential purpose in the institution of the cemetery and the subsequent conveyance to lot owners is to provide for the burial of the corpse, and that the form or material of the container is an incident thereof." Upon appeal the trial court was sustained, the court saying [109 Pa. Super. Ct. 503]: "However, the court disposed of it [the case] properly and held that the cemetery company had a right, without profit, to transact, in addition to maintaining their main purpose, such subordinate

and connected matters which fit in essentially or are at least convenient to the due prosecution of the chartered purposes." Citing cases. "It does not appear that the company compels those who are about to require a vault that they buy the vault from it."

This court in State v. Lakewood Cemetery Assn. 93 Minn. 191, 194, 101 N. W. 161, 163, denied the state's claim to the right to tax defendant upon its real estate not used for burial purposes but for the operation of a greenhouse. In that case the flowers grown in the greenhouse were. used to beautify the cemetery and the surplus was sold to the public. This court there said:

"The use of a small portion thereof for a greenhouse for the purpose of growing flowers and plants to be used in beautifying the grounds, clearly, in our judgment, falls within the authority conferred upon appellant. It is a matter of common knowledge that greenhouses are maintained by many of the large cemetery associations throughout the country, and the sale of a small amount of the surplus stock is but an incident to the general management. We are of the opinion the land so acquired is exempt from taxation."

Upon this record we think the trial court was abundantly justified in concluding:

"That the actions of the defendant complained of by the relator in said complaint have been and are being performed properly and legally by the defendant, and that the defendant, in engaging in the manufacture and sale to its own lot owners of wooden and concrete burial vaults has been and is acting entirely within its corporate rights and powers."

The judgment is affirmed.