FOREST LAWN MEMORIAL PARK ASSOCIATION, INC., PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102989.   Promulgated December 26, 1941.

*Melvin D. Wilson, Esq.*, for the petitioner.
*Frank T. Horner, Esq.*, for the respondent.

1094

**OPINION.**

MELLOTT: Petitioner's first contention is that it is exempt from Federal income tax under the provisions of section 103 (5) of the Revenue Act of 1932 and section 101 (5) of the Revenue Acts of 1934 and 1936. These sections, which are identical in each act, provide that:

 *  *  *  *  *  *  *

The following organizations shall be exempt from taxation under this title—

 *  *  *  *  *  *  *

(5) Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

It has been held that the above section contains three statutory requisites for exemption, which are mutually independent, and that the presence of any of them creates an exemption. *Commissioner* v. *Kensico Cemetery*, 96 Fed. (2d) 594, affirming 35 B. T. A. 498. Petitioner contends that it qualifies for exemption under each and all of them.

Petitioner's argument that it is a cemetery company owned and operated exclusively for the benefit of its members and hence within the first classification mentioned in the statute is not persuasive. The cemetery association (Forest Lawn Cemetery Association) probably qualifies under this provision, though whether it does or not is immaterial here. The provision was obviously intended to apply where individuals, by purchasing lots or rights of internment in a cemetery, thereby become entitled to membership in the association and to have a voice in its management. Under petitioner's articles of incorporation no one is eligible for membership unless he owns property in the park of a value of at least $100, pays a membership fee of $10 and such annual dues as the board of directors prescribe, and has been duly elected to membership. During the taxable years petitioner had approximately 25 members, it having deliberately limited its membership to not more than 30 in order that it not be handicapped, as was its predecessor, when meetings of membership were desired for the purpose of transacting business. Petitioner's contention that its lot owners are its real members is also fallacious. They, at best, collectively constituted a reservoir from which members could be drawn.

The second requisite for exemption is much more favorable to petitioner. It provides for the exemption of cemetery companies which "are not operated for profit." Petitioner was organized in 1926 as a nonprofit cemetery corporation under the laws of California. The law permitting the organization of such corporations (sec. 593, Civil Code of California) prohibited the distribution of gains, profits, or dividends to the members thereof. Petitioner's articles of incorporation specifically provide that it shall be operated without profit to any of its members, and its bylaws state that its profits must be expended in the improvement of the cemetery property or for the benefit of the association and can not be disbursed to any individual or corporation. The general manager of petitioner and one of its members both testified it was understood, when petitioner was organized, that its members would receive no dividends or distributions of any kind, and that even upon petitioner's liquidation, its assets would not go to its mem-

bers but would constitute a trust fund for the benefit of all the lot owners, to be used for the perpetual care and upkeep of the cemetery. The bylaw referred to above and the further provision that termination of membership should not entitle the member to participate in the assets of the corporation indicate that this understanding must, and will, be carried out.

Nor does the fact that petitioner derived some gain from its activities necessarily indicate that it is a cemetery company operated for profit. Obviously, it could not operate and maintain the large acreage devoted to cemetery purposes unless it realized some profit from its sales and services. On a number of occasions the courts and this Board have considered whether the conduct of certain activities at a profit justified the denial of an exemption which otherwise would have been allowed. Such activities have included use of properties by a corporation operated for religious, benevolent, scientific, and educational purposes to produce income through trading in wine, chocolate, and other articles, *Trinidad* v. *Sagrada Orden de Predicadores*, 263 U. S. 578; the conduct of an inn and the publication of books and periodicals, *Unity School of Christianity*, 4 B. T. A. 61; sale of oil to refineries, gas to distributing companies, farm products and water, and operation of a greenhouse and a cotton gin by an institution established for the care of orphans, *Sand Springs Home*, 6 B. T. A. 198; sale of ice and ice cream, *Eugene Fruit Growers Association*, 37 B. T. A. 993; publication and sale of a monthly magazine, *American Society of Cinematographers, Inc.*, 42 B. T. A. 675; and lease of grazing rights, *Koon Kreek Klub* v. *Thomas*, 108 Fed. (2d) 616. The profit realized from these activities was, in each instance, exempted from income tax, emphasis being placed upon the destination of the income rather than its source. Where it was found that a corporation was organized for the purpose of engaging in an activity exempted from income tax, profits realized were held to be exempt if they were used to advance or further the tax-exempt purpose. As the Supreme Court stated in *Trinidad* v. *Sagrada Orden de Predicadores*, *supra*, "Evidently the exemption is made in recognition of the benefit which the public derives from corporate activities of the class named, and is intended to aid them when not conducted for private gain." The predominant purpose for which petitioner was organized was to operate and maintain a cemetery for the interment of the dead. Any profits which it realized from any of its activities were used to advance and further this purpose, and, despite respondent's contention to the contrary, hereinafter discussed, no part of its net earnings inured to the benefit of any private individual or shareholder. It was, therefore, not operated for profit and is entitled to the claimed exemption.

Practically all of respondent's argument on brief is directed to the applicability of the third subdivision of the statute, which allows

exemption to any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual. He contends that petitioner is not entitled to exemption under this provision because: (1) it engaged in several activities extraneous to the conduct of a nonprofit cemetery association; and (2) some of its profits inured to the benefit of private individuals. The activities listed as "extraneous" are the conduct of a mortuary, the sale of flowers, booklets, post cards, brochures, etc., and wedding services held in the two churches within the cemetery.

Petitioner urges that these activities are necessarily incident to its operation of a cemetery for burial purposes and cites several state court decisions. In *State* v. *Lakewood Cemetery Association*, 93 Minn. 191; 101 N. W. 161, a corporation organized under the laws of Minnesota for the purpose of procuring and holding lands to be used exclusively as a public cemetery or place for the burial of the dead, conducted a greenhouse in the cemetery for the purpose of growing flowers and plants to be used in beautifying the grounds. Any surplus stock not necessary for such use was sold for the benefit of the association. The Supreme Court of Minnesota held that the conduct of the greenhouse was not a use of the cemetery for other than cemetery purposes, and that the sale of the surplus flowers was but an incident to the general management. This court also held in *State* v. *Lakewood Cemetery*, 267 N. W. 510, that the same cemetery association was acting within its corporate rights and powers in engaging in the manufacture and sale to its lot owners of wooden and concrete burial vaults at a profit. To the same effect see *Dries* v. *Evans Cemetery Co.*, 109 Pa. Super. 498; 167 Atl. 237.

In *Wing* v. *Forest Lawn Cemetery Association*, 15 Cal. (2d) 472; 101 Pac. (2d) 1099, an owner of burial space in Forest Lawn Memorial Park brought an action against petitioner, the cemetery association, and the land company to enjoin the operation of a funeral director's and embalming business on the premises of the cemetery. Section 608 of the Civil Code of California authorized corporations to acquire land to be held and occupied "exclusively as a cemetery for the burial of the dead." The Supreme Court of the State of California interpreted the quoted phrase as permitting a cemetery company to operate a mortuary in the cemetery grounds, pointing out that, while cemeteries have been and are now used primarily for the burial of the dead, portions of cemetery properties have been used for numerous other incidental purposes such as greenhouses, nurseries, chapels, administration buildings, tool houses, incinerators, storage for wooden and concrete vaults, and the manufacture of stone vaults, and that these and other practices had in many instances received judicial approbation. The court said:

Manifestly the operation of a mortuary where bodies are prepared for interment or cremation is a much closer and more intimate incident of burial than the activities above referred to. We therefore conclude that cemetery lands may be used for such purposes as are incident to the burial of the dead, so long as the rights of the lot owners in their own lots and their rights of egress and ingress thereto are not invaded.

The court also said:

    * * * we do not find that the operation of a mortuary is inconsistent with the holding and occupying of land *"exclusively as a cemetery* for the burial of the dead."

Petitioner also calls our attention to two rulings issued by the respondent which seem to be contrary to the position which he now takes. In G. C. M. 20853, Cumulative Bulletin 1938–2, p. 166, he ruled that an association which operated a cemetery for the benefit of several churches was exempt from Federal income tax even though its income was derived from the sale of cemetery lots, wood and cement boxes, flowers, and from services rendered at funerals and in caring for the graves. In S. 991, Cumulative Bulletin No. 1 (1919), p. 198, he issued a similar ruling with respect to a cemetery company which manufactured and sold vaults, mausoleums, and other cemetery appliances and improvements, and also owned and operated greenhouses and conducted the business of florists. The latter ruling contains the statement that, "It seems clear that the greenhouse and florist business is but an incident of the cemetery."

In our opinion all of the activities of petitioner, which respondent describes as extraneous to the conduct of a nonprofit cemetery organization, were carried on as incidents of petitioner's principal function—the operation and maintenance of a cemetery for the burial of the dead. The cited cases and rulings strongly support this conclusion. It is true that some of the activities herein involved, such as the sale by petitioner of booklets, postcards, and pictures, and weddings held in the two churches within the cemetery without charge except for services, were not considered in the cases and rulings referred to above. It is clear, however, that they were engaged in by petitioner primarily for the purpose of advertising the cemetery and bringing to the attention of the public its beauty and desirability as a final resting place for the dead. If so, it seems that they were "necessarily incident" to the main purpose for which petitioner was created and hence within the ambit of the statute. (Sec. 103 (5) and 101 (5), *supra.*)

On brief respondent argues that the conduct of a mortuary, including as it does, all of the services normally rendered by an undertaker, is not a business exempt from income tax, and that to hold petitioner exempt from tax would be tantamount to exempting every individual or corporate entity engaged in the conduct of a mortuary or undertaking establishment. This argument is without merit. Exemption

from tax under the statute could not be allowed to an undertaking establishment, the profits of which inure to the benefit of any private shareholder or individual. It can only be allowed to a cemetery association meeting the statutory requirements in recognition of the benefit which the public derives from its activities. *Trinidad* v. *Sagrada Orden de Predicadores, supra.* The statute recognizes that nonprofit organizations, operating and maintaining cemeteries for the burial of the dead, must of necessity be permitted to engage in activities necessarily incident to that purpose. The conduct of a mortuary in our judgment is such an activity. The fact that it is operated at a profit in competition with purely commercial ventures does not justify the denial of the exemption. "It is only when such profits or net income are used for private rather than public benefit that Congress has taxed them." *Unity School of Christianity, supra.* Our holding that petitioner is exempt from tax does not and can not result in the exemption of every individual or corporate entity engaged in the conduct of a mortuary or undertaking establishment any more than the holding of the Board in the last cited case, e. g., exempted inn keepers and publishers from tax.

Respondent's contention that the profits of petitioner inure to the benefit of a private individual seems to be bottomed largely upon the fact that Eaton received substantial fees and commissions for his services and also received dividends from, or profited by the accretion to, the capital of the land and holding companies. The fees and commissions received by Eaton constituted reasonable compensation for his services in connection with the management and development of one of the largest and most beautiful cemeteries in the United States. While it is true that the land company received 50 percent of the gross proceeds of sales of lots and 60 percent of the gross proceeds of sales of niches, crypts, vaults, and other mausoleum-columbarium property, there is no evidence to support respondent's statement on brief that the family of Eaton, through stock ownership, controlled either the land company or its parent company. Even if it be assumed that some of the stock of the parent or holding company was owned by Eaton and members of his family, though no showing to that effect has been made, and even if it be assumed that they benefited, as stockholders, from the profits which the land company realized from its transactions with petitioner, we do not think that this would justify a denial of the exemption to the petitioner. The statute requires only that no part of the "net earnings" of petitioner inure to the benefit of any private shareholder or individual. No part of petitioner's net earnings was distributed to the land company or to Eaton. The profits realized by the land company from its dealings with petitioner, and the profits realized by petitioner from its sales and other activities are two

separate and distinct matters. The profits of the land company are taxable because they inure to the benefit of its stockholders. The net earnings realized by petitioner are not taxable because they do not inure to the benefit of any private shareholder or individual. Neither the compensation paid to Eaton nor the amounts paid to the land company formed any part of petitioner's net earnings. They were items which had to be deducted from its gross receipts in determining its net earnings. Cf. *Commissioner* v. *Kensico Cemetery, supra.*

While we prefer to rest our decision on the ground that petitioner is a cemetery company which is not operated for profit, and hence that it is exempt from tax under the second subdivision of the statute, we believe it also qualifies for exemption under the last subdivision. It follows that respondent erred in determining that petitioner was not exempt from Federal income tax.

Under issue two petitioner contends that it was prohibited by the provisions of a written contract executed by it prior to May 1, 1936, from paying dividends. Recognizing that its articles of incorporation do not constitute a written contract, it relies upon its membership certificates, which make each member, "subject to its articles of incorporation and bylaws and any and all amendments thereof * * * ." This, it says, constitutes a written contract and entitles it to the credit specified in section 26 (c) (1) of the Revenue Act of 1936. In issue three petitioner urges that its failure to file timely income tax returns was due to reasonable cause and not to willful neglect, and that it is not therefore liable for any addition to tax under the provisions of sections 291 of the Revenue Acts of 1932 and 1934, and section 406 of the Revenue Act of 1935. Having held that petitioner is exempt from tax, it is unnecessary to decide either issue two or issue three.

*Decision will be entered under Rule 50.*