LUHMAN and another, Copartners, Respondents, v. EVER-
GREEN CEMETERY ASSOCIATION, Appellant.*

*February 2—March 8, 1960.*

* Motion for rehearing denied, without costs, on May 3, 1960.

For the appellant there were briefs by *Smith, Rogers & Smith* of Fort Atkinson, and oral argument by *William H. Rogers.*

For the respondents there was a brief by *Clifford & Fitzpatrick,* attorneys, and *William B. Clifford* and *James A. Fitzpatrick* of counsel, all of Watertown, and oral argument by *James A. Fitzpatrick:*

A brief was filed by *Ward Dunphy* of Milwaukee, for the Wilbert Burial Vault Manufacturers as *amicus curiae.*

BROADFOOT, J.   The defendant is a Wisconsin cemetery association duly organized and existing under and by virtue of the laws of the state of Wisconsin, and particularly under the provisions of ch. 157, Stats., having its principal office and place of business in the city of Fort Atkinson.  Plaintiffs are manufacturers of patented burial

vaults that are sold through undertakers. These vaults they contract to deliver and install with special equipment.

On or about April 30, 1957, the defendant notified plaintiffs and other vault manufacturers that beginning on May 1, 1957, a minimum service charge of $20 payable on entering the cemetery would be assessed directly against all concrete burial-vault manufacturers for the assistance of cemetery employees in the assembling and disassembling of equipment, lowering of the vault, and placing of the cover on such vaults and boxes accepted for use by the association. This action was started as the result of the adoption of that rule. At the time of the commencement of the action plaintiffs had a contract to furnish and service a Wilbert concrete burial vault on the Albert Stark lot in the cemetery.

Upon the first appeal we stated that cemetery associations have the right to make rules but the rules must be reasonable, made in good faith, and must apply to all persons uniformly. It appeared upon the trial that shortly before the defendant passed said rule it became the agent for the sale of vaults manufactured at Janesville, Wisconsin, by the L & M Vault Company. It further appeared that the defendant assessed the $20 against all concrete-vault manufacturers except the Janesville company for which it was the agent. The trial court held that the rule was reasonable but that it did not apply to all persons uniformly and therefore it was discriminatory.

At the time of the first appeal neither party could cite any controlling Wisconsin case dealing with the question involved in the controversy. Upon this appeal both parties cite cases from other jurisdictions that we do not deem to be controlling. The first case cited by the defendant is that of *Davisson v. Mount Moriah Cemetery Asso.* 87 Mont. 459, 288 Pac. 612. In that case a concrete-vault manufacturer brought an action to enjoin the defendant

cemetery association from enforcing its rule that after a certain date only vaults manufactured by the defendant could be used in the cemetery. It appeared that lots in the cemetery were sold by the defendant under deeds containing the following clause (p. 462) :

" 'Said property is conveyed by said party of the first part [the cemetery association] upon the express condition that said lot shall be used for the burial of human bodies and for no other purpose, and any improvement made thereon shall be made by the party of the first part for a price to be uniformly fixed for said improvement, and shall be made, erected, and constructed in accordance with the rules heretofore prescribed or which may hereafter be made relative to the making, erection, or construction of improvements, or in the control of and management of the Mount Moriah Cemetery, and the grantee herein and . . . administrators and assigns shall use said property and hold the right to use the same subject to the rules adopted by said corporation.' "

The court held that the plaintiff had no standing as a manufacturer of cemetery vaults to question the reasonableness of the regulation made under the reservation in the deeds as that was a question to be raised by lot owners only, who were affected by the regulation. No such restrictions appear in the Stark deed. In the present case the fee is charged directly to the vault manufacturer, and in *Anheuser v. West Lawn Cemetery Co.* 230 Wis. 262, 282 N. W. 577, our court held that a monument company, which had sold a monument to the owner of a lot in a cemetery, had an interest in the carrying out of its contract which it could protect on the cemetery company's refusal to allow the monument to be erected. Plaintiffs have the same interest here by virtue of their contract. The Montana case is not applicable.

The second case relied upon by the defendants is *State ex rel. Benson v. Lakewood Cemetery,* 197 Minn. 501, 267

N. W. 510. That was a proceeding in *quo warranto* by the state of Minnesota on the relation of its attorney general against the cemetery association to test the right of the association to engage in business for profit under its articles and under the laws of Minnesota pertaining to cemetery associations. One of the arguments advanced by the relator was that the association made a $5 service charge for supervising the installation of vaults procured from other sources than the defendant cemetery association. The trial court had stated that this did not constitute an interference or handicap to the vault makers. The supreme court said it could see nothing in that alone justifying the plaintiff's complaint. Thus the Minnesota case is not in point.

We shall not attempt to analyze all of the cases cited. Our decision upon the first appeal became the law of this case. It is apparent from the record that the charge was not applied uniformly to all vault manufacturers.

The plaintiffs moved to review the finding of the trial court that the charge was reasonable. They had the burden of proving that the rule was unreasonable. A service charge must bear some relation to the service furnished and the cost thereof to the cemetery association. The plaintiffs introduced testimony that the defendant's employees could not be of assistance to them because their special equipment differed from other vault-lowering devices and could only be operated by its trained personnel. Also, that they received no help from the defendant's employees.

A restraining order contained in an order to show cause was served with the summons and complaint. This order restrained the defendant from enforcing its rule until after a hearing on the order to show cause. Apparently this order remained in effect throughout the entire proceedings. The record does not disclose the reason for the adoption of the rule nor do the minutes of the meeting at

which the rule was adopted appear therein. The only evidence in the record as to the provisions of the rule is the notice forwarded to plaintiffs and to other vault manufacturers. Some charge for supervision of the activities of a vault manufacturer could probably be justified. The defendant was handicapped in the presentation of proof, had any been required, because of its very limited experience with the rule which it had been restrained from enforcing. Although the question of the reasonableness of the charge was not thoroughly litigated, the plaintiffs failed to meet their burden of proof.

The trial court properly applied the law of this state to the facts presented to it and arrived at the correct determination.

*By the Court.*—Judgment affirmed.