[S. F. No. 2989.　Department Two.—March 5, 1903.]

In the Matter of the Estate of MARGARET THERESA
GAY, Deceased.　MARTIN FRANCIS QUINN, Appel-
lant, v. LIZZIE GAY, Respondent.

WILL — VOID TRUST — PERPETUITY — PERMANENT FUND FOR CARE OF
BURIAL-PLOT.—A provision in a will attempting to create a per-
manent trust fund, the income of which is to be devoted to the
care of the testator's burial-plot, does not establish a charitable
use, and is void, as creating a perpetuity in violation of section 9
of article XX of the constitution.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.　James M. Troutt, Judge.

The facts are stated in the opinion.

Archibald Barnard, for Appellant.

The bequest is void, as creating a perpetuity, and is not a
charity.　(Perry on Trusts, 3d ed., sec. 682; *Piper* v. *Moulton*,
72 Me. 155; *Bates* v. *Bates*, 134 Mass. 110; [1] *Coit* v. *Comstock*,
51 Conn. 286, 352; [2] *Johnson* v. *Holifield*, 79 Ala. 423, 426; [3]
*Kelly* v. *Nichols*, 17 R. I. 306, 318, 322; 18 R. I. 62; *Fite* v.
*Beasley*, 12 Lea (Tenn.), 328; *Knox* v. *Knox*, 9 W. Va. 124.)

Walter Perry Johnson, for Respondent.

The trust clause does not create a perpetuity.　It is to Lizzie
Gay alone, without words of succession, and is only for her
life, the benefit of the surplus to be enjoyed by her.　(1 Perry
on Trusts, sec. 317; *Jackson* v. *Myers*, 3 Johns. 388; [4] *Lloyd* v.
*Lloyd*, 10 Eng. L. & E. R. 139; *Johnson* v. *Holifield*, 79 Ala.
423, 424; [5] *Piper* v. *Moulton*, 72 Me. 150, 155; *Leonard* v. *Haw-
orth*, 171 Mass. 496; *Hornberger* v. *Hornberger*, 12 Heisk. 635,
640; *Estate of Upham*, 127 Cal. 90.)　The bequest is valid as a
charitable trust.　(*Jones* v. *Habershaw*, 107 U. S. 174, 183;
*Bronson* v. *Strouse*, 57 Conn. 147; *Swasey* v. *American Bible
Society*, 57 Me. 527; *Ford* v. *Ford*, 91 Ky. 572; *Green* v.

---

[1] 45 Am. Rep. 305.
[2] 50 Am. Rep. 29.
[3] 58 Am. Rep. 596, and note.
[4] 3 Am. Dec. 504.
[5] 58 Am. Rep. 596, and note.

*Hogan,* 153 Mass. 462, 467; *In re Bartlett,* 163 Mass. 509, 513; *Nauman* v. *Weidman,* 182 Pa. St. 263; *Gafney* v. *Kenison,* 64 N. H. 354; *Joy* v. *Fesler,* 67 N. H. 257.)

CHIPMAN, C.—Martin Francis Quinn, the distributee of the residue of the estate, appeals from the decree of partial distribution to Lizzie Gay, who was one of several legatees of the will of deceased. The second clause of the will reads as follows:—

"I direct that the sum of $2,000 be set apart out of my estate, and safely invested and reinvested by said Lizzie Gay, either by deposit in first-class savings banks in said city and county, or in first mortgages on real estate in said city and county; the loan on mortgage in no case to exceed fifty per cent of the market value of the property mortgaged; such fund to constitute a permanent fund, the income thereof, whether consisting of interest or dividends, shall be used for the purpose of keeping my burial-plot in the Masonic Cemetery in good and proper condition; and I desire that my remains be interred in said plot. But in case, for any reason, burials in said cemetery should be prohibited or cease before my death, or after my death it be required to remove the bodies interred in said cemetery therefrom, then she shall use said interests or dividends in keeping in good order and proper condition any other burial-plot in which my remains shall be interred, or to which they may be removed and re-interred.

"And I hereby bequeath and devise such sum of $2,000 to her in trust for such purposes. If there remain in her hands any surplus or interests or dividends which shall be unnecessary for such purposes, such surplus shall be retained by her for her own use and benefit."

The question here presented is, Can a testator create a permanent fund in trust, the income of which is to be devoted for all time to the care of his place of interment?

Section 9 of article XX of the constitution provides as follows: "No perpetuities shall be allowed except for eleemosynary purposes." Trusts for perpetual charitable uses are not in conflict with this section. (*Estate of Hinckley,* 58 Cal. 457.) The term "eleemosynary" includes all charitable purposes. (*People* v. *Cogswell,* 113 Cal. 130.) The

question then is, Is the trust attempted to be created by the testatrix a charitable use? We think it is not.

Respondents contend that the bequest is to Lizzie Gay alone, without words of inheritance or succession; that the trust dies with her, and hence there is no illegal suspension of the power of alienation. The money which is to be invested is, by the express provisions of the will, "to constitute a permanent fund, the income whereof . . . shall be used for the purpose of keeping my burial-plot in the Masonic Cemetery . . . in good and proper condition," where she directed her remains to be buried. And she provided against the contingency of some other place receiving her remains, in which case she directed the income to be used "in keeping in good order and proper condition any other burial-plot in which my remains shall be interred, or to which they may be removed and re-interred." It is true that no provision is made for the appointment of a successor upon whom the trust should de-volve or to whom such surplus should go at the death of the trustee named. But the law is, that a trust, otherwise valid, will not be permitted to fail for failure of the trustor to name a successor to the trustee chosen. (*Estate of Upham*, 127 Cal. 90.) In *Fay* v. *Howe*, 136 Cal. 599, the will named a particular person to expend the income of the trust fund for a particular charitable purpose, and the testator made no provision for the appointment of a successor. It was held that a court of equity will not allow the trust to fail in such case, but that the court will appoint.

It is urged also by respondents that the terms "such fund to constitute a permanent fund," meant merely that the trust should continue only during the life of Lizzie Gay. Obviously this cannot be so, for it is not reasonable to suppose that the testatrix had in mind only the care of her grave for a period so uncertain and temporary, and, besides, the trustee may have died before the testatrix died. She set apart a considerable sum, the income to be devoted to the purpose named, and she made no provision for the principal ever to go in furtherance of any other object. If she had contemplated the trust to determine at the death or resignation of the trustee named, or failure to qualify, she would have directed as to the disposition of this principal sum. It seems to us too clear to admit of doubt that she intended to create a

perpetual fund, which is what she meant when she used the word "permanent."

The question recurs, Is the trust a valid charity? It is not necessary to exploit at length the decisions of courts on this question. The ground has been traversed by many able judges and the decisions collated. It can hardly be said that they are discordant, although there is a case here and there giving some support to respondent's contention. But these cases are infrequent, and, when considered with reference to the circumstances attending them, and the statutes more or less controlling the decisions, they rather prove the rule as exceptions. The precise question has not been heretofore decided by this court, so far as I have found. A similar provision in the will in *Estate of Willey,* 128 Cal. 1, was assumed to be invalid for the purposes of the argument. In *Estate of Upham,* 127 Cal. 90, the will contained a similar provision, but the question here was not raised. *Kelly* v. *Nichols,* 17 R. I. 306, is an instructive case, as it points out that the statement, favorable to respondent's contention, made in the American and English Encyclopædia of Law (1st ed., vol. 3, sec. 8, title "Charities"), is not warranted by the authorities cited in its support, and so also the statement made by Mr. Perry, in his work on Trusts (sec. 706).

In *Kelly* v. *Nichols,* the testator, with abundant expressions of pious wishes, devised his estate in aid of many worthy objects,—among these, to keep in repair the graves of his sisters and himself. The court said: "This question can only be determined by the purposes for which the gift is made as disclosed in the will. The first designated purpose is the care of the graves. Among all classes there is a pervading sentiment of reverence for the burial-places of the dead, which springs naturally from the Christian belief in the resurrection of the body. This sentiment is recognized in this state and elsewhere, by the creation of corporations for maintaining and adorning cemeteries, and by statutes which allow town councils to receive and hold funds in trust for the care of burial-lots. However general and commendable this sentiment may be, and however desirable it may be that the graves of the dead be decently and reverently cared for, nevertheless we do not think a bequest of this kind falls within the limits of a charitable use. It is not a gift in aid of any public object,

nor for a purpose which affects the public in any way. It benefits no one. Its purpose is purely private and personal. It seeks to create a perpetuity simply to insure the care of the testator's own burial-lot. It does not run to a corporation created for this special purpose or authorized by its charter to receive such gifts, but to trustees in perpetuity. It is now well settled in England that such bequests are void. Cases on this subject are fully collected in Tyssen on Charitable Bequests (chap. VII), and also in *Jones* v. *Habershaw,* 107 U. S. 174, 183, where Judge Gray says: 'In England there has been a difference of opinion upon the question whether the maintenance and repair of the tomb or monument of the donor is a good charitable use. Down to the time of the American revolution, as by the civil law, it appears to have been held that it was. According to the late English cases it is not.'

"We think this latter view is to be regarded as the rule in this country." (Citing cases.)

*Bates* v. *Bates,* 134 Mass. 110,[1] was a case where the testatrix undertook to create a trust fund "to beautify and keep in good order" her late husband's monument. The court said: "Funds cannot be established indefinitely inalienable in the hands of those to whom they are intrusted, and their successors, the income of which is to be perpetually devoted to uses which are not, legally speaking, charitable." Proceeding then to inquire whether this was a charitable use, the court said it was not limited by the enumeration of charitable uses in the Statutes of 43 Elizabeth, chap. IV. But the court said: "That it may be charitable, the use must be of such character that the general public is to have the advantage of it, and not merely individuals."

In *Piper* v. *Moulton,* 72 Me. 155, the bequest was to the testator's native town, on condition that the town should expend the income thereof, forever to keep his lot in a certain burying-ground in good order and repair and an iron fence around the same. It was held "not a charitable use, for which a perpetuity might be created." In a late Massachusetts case (*Morse* v. *Natick,* 176 Mass. 510, cited by respondent), the testator gave to the town of Natick a fund, in trust, the income to be used "for the preservation of the monument

---
[1] 45 Am. Rep. 305.

which my executor is hereby authorized to erect at my grave, and the care and beautifying of my lot in the cemetery." The couit said: "It is settled in this commonwealth that a bequest to provide for the permanent care and beautifying of a bur,al-place and monument is not a public charity, and is void at common law as creating a perpetuity." (Citing *Bates* v. *Bates*, 134 Mass. 110, and other cases.) "But it is also settled in this state that a trust to keep a burial-lot and monument always in good order is, under our statutes, a good perpetual trust." This power, however, is based on the statute of 1884, passed since *Bates* v. *Bates* was decided.

In *Smith's Estate*, 5 Pa. Dist. Rep. 327, the fund in trust was to erect a monumental memorial of the testator in a public park in the city of Philadelphia, to include equestrian statues and busts of various distinguished Pennsylvanians named in the bequest, and also a statue of the testator, with his name underneath, "in large letters." It was held not void as a perpetuity, but was a public charity, since such a memorial would tend to the "elevation and refinement of the people, cultivate a love for the beautiful in art and architecture, and keep alive their patriotism and remembrance of the martial prowess and good deeds in statesmanship and civil life of heroes, patriots, and citizens worthy of perpetuation," and was for the beautifying and adornment of the city. But it was further held within the Pennsylvania act of 1891, especially declaring that no disposition of property for the maintenance or care of any cemetery, churchyard, etc., or monument, should be void as a perpetuity. This case cannot support the position taken by respondents. Respondents claim that section 616 of the Civil Code, as it formerly read, and as amended by the àct of March 25, 1901, (Stats. 1901, p. 814,) is declaratory "of the policy of the state in favor of allowing trusts for the preservation of a private grave." That section only authorizes corporations formed to improve cemeteries, to take and hold any property bequeathed in trust and apply the proceeds, "to the improvement . . . of any lot" in a cemetery. There is nothing in the statute which by implication or otherwise can authorize the court to determine a bequest such as this to be a charitable use. To do so would permit the multimillionaire whose personal vanity was sufficiently absorbing to devote one third of his estate (Civ. Code,

sec. 1313), and all of it, if he left no next of kin or legal heirs, to the erection of a mausoleum of vast proportions and cost, and create a large trust fund for its perpetual care and future adornment. If such an object is a charitable use, the testator can so devote his fortune, however great; if it is not a charitable use, the attempt to do so would be void in the case suggested, and his property would go to the state, there being no owner. (Civ. Code, sec. 670.) Until the state, through its legislature, has placed the object here sought to be realized in the category of charitable uses, we do not think the court should do so.

It is advised that the judgment should be reversed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed.    McFarland, J., Lorigan, J., Van Dyke, J.

Hearing in Bank denied.