[L. A. No. 16777. In Bank.—April 30, 1940.]

HELEN S. WING, Appellant, v. FOREST LAWN CEMETERY ASSOCIATION (a Corporation) et al., Respondents.

474

Michael F. Shannon, Thomas A. Wood, and Charles W. Wolfe for Appellant.

Call & Murphey and Robert B. Murphey for Respondents.

Raymond Brennan, Byron C. Hanna, Sullivan, Roche & Johnson, Ed. P. Sample and Hanna & Morton, as *Amici Curiae*, on Behalf of Respondents.

CARTER, J.—This is an appeal from a judgment of dismissal entered upon an order sustaining a demurrer in an action brought by an owner of burial space in Forest Lawn Memorial Park, a private cemetery located in Los Angeles County, to enjoin the operation of a funeral director's and embalming business on the premises of said cemetery. Defendants' demurrer to plaintiff's original complaint was sustained without leave to amend. Plaintiff then moved to file a proposed amended complaint, but said motion was denied on the ground that the proposed amended complaint contained no new or different facts sufficient to constitute a cause of action. Thereupon, there was entered the judgment from which plaintiff herein appeals.

It is alleged in plaintiff's complaint that on May 11, 1929, she purchased from the Forest Lawn Memorial Park Association two lots, for interment purposes only, and that in violation of a restrictive negative easement contained in the deed thereto, the defendant corporations are now maintaining a

mortuary business on the premises of said Forest Lawn Memorial Park.

Plaintiff's claim to a restrictive negative easement is predicated on (1) the provisions of section 608 of the Civil Code as in effect at the time of the execution of her deed, and (2) the wording of said deed. Defendants deny that any restriction as to the operation and management of a mortuary arises either from said deed or said statute, and contend that plaintiff in her complaint has stated no cause of action.

The questions requiring our consideration are whether the complaint alleges facts showing the existence of such a restriction, and if so, whether a violation of the same should be relieved by the issuance of an injunction.

Numerous authorities are cited by plaintiff to the effect that parties are presumed to contract with reference to laws in existence at the time a contract is made and that statutes pertinent to the subject of an agreement enter into and become as much a part of it as though the language were incorporated in its terms. Basing her argument on these premises, plaintiff asserts that when the deed to her lot was executed in 1929, the use to which cemetery corporations could put their lands was limited to the burial of the dead by the language of Civil Code, section 608. The portion of said section from which she makes this deduction is as follows:

"Corporations organized to establish and maintain cemeteries may take by purchase, donation, or devise, land, not exceeding three hundred and twenty acres in extent, in the county, wherein their articles of incorporation are filed, or in an adjoining county, and may employ any surplus moneys in the treasury thereof, for such purpose; such lands to be held and occupied exclusively as a cemetery for the burial of the dead. . . . "

Defendants on the other hand point out that said section, as it existed in 1929, was a part of that division of the Civil Code which dealt with the incorporation and powers of various types of corporations, and contend that said section was not intended to be a declaration of the legislature imposing perpetual restrictions on the free use of real property, but merely a grant of corporate powers, the exercise of which can be questioned only by the state in a *quo warranto* proceeding. Support for this view of the statute is found in the

case of *Odd Fellows' Cemetery Assn.* v. *San Francisco,* 140 Cal. 226, at 232 [73 Pac. 987], where this court said:

"The provisions of the act of 1859 for the incorporation of rural cemetery associations (Stats. 1859, 281), which are substantially reenacted in sections 608 to 616 of the Civil Code, are cited as general laws conflicting with this ordinance. *Section 4 of the act and section 608 of the Civil Code give such corporations power to take and hold, within the county, lands not exceeding three hundred and twenty acres in extent, to be held and occupied exclusively for cemeteries.* This is a grant of power to such corporations to own property, and the limitation of the amount that may be acquired, and of the uses to which such property may be devoted." See, also, *Estate of Gay,* 138 Cal. 552, 557 [71 Pac. 707, 94 Am. St. Rep. 70], and *Application of Laurel Hill Cemetery Assn.,* 73 Cal. App. 193, 198 [238 Pac. 732].

■ We are inclined to agree with this contention of the defendants, although mindful of the rule as it has been stated that "all applicable laws in existence when an agreement is made necessarily enter into it and form a part of it as fully as if they were expressly referred to and incorporated in its terms". (*Gally* v. *Wynne,* 96 Cal. App. 145, 148 [273 Pac. 825].) This rule, however, should be limited to those laws which are "applicable" and which affect "the validity, construction, discharge or enforcement of the contract", (*Burke* v. *Meyerstein,* 94 Cal. App. 349, 353 [271 Pac. 343]; *Connecticut Mutual Life Ins. Co.* v. *Cushman,* 108 U. S. 51 [2 Sup. Ct. 236, 27 L. Ed. 648, 653];. *Rosenplanter* v. *Provident Savings Life Assur. Soc.,* 96 Fed. 721, 727 [37 C. C. A. 566, 46 L. R. A. 473]), and care should be taken that its application is not extended to lengths which approach absurdity.

■ Nevertheless, assuming for the purposes of this opinion only, that the terms of said section were in effect incorporated into. plaintiff's deed to interment space in her burial lots, we do not find that the operation of a mortuary is inconsistent with the holding and occupying of land *"exclusively as a cemetery* for the burial of the dead"*.

In her interpretation of its meaning, plaintiff would transpose this clause to read that such land must be occupied "as a cemetery *exclusively* for the burial of the dead"*, rather than as adopted by the legislature where the words "burial of the

dead'' are used in a manner descriptive of the word ''cemetery'' without reference back to the word ''exclusive''. That such an interpretation has previously been placed on the same clause by this court is indicated by the italicized portion of the above quotation from the case of *Odd Fellows Cemetery Assn.* v. *San Francisco, supra.*

■ Cemeteries have always been and are now used primarily for the burial of the dead, but portions of cemetery properties have likewise been used for numerous other incidental purposes, such as greenhouses, nurseries, chapels, administration buildings and tool houses. In many instances these and other practices have received judicial approbation. For instance, in the case of *State* v. *Lakewood Cemetery Assn.,* 93 Minn. 191 [101 N. W. 161], a corporation organized under a statute similar to Civil Code section 608, which provided that a cemetery association might purchase land not exceeding three hundred acres in area ''to be held, actually used and occupied exclusively for a cemetery for the burial of the dead and for purposes necessary or proper thereto''; it was stated at page 163 that:

''The use of a small portion thereof for a greenhouse for the purpose of growing flowers and plants to be used in beautifying the grounds, clearly, in our judgment, falls within the authority conferred upon the appellant. It is a matter of common knowledge that greenhouses are maintained by many of the large cemetery associations throughout the country, and the sale of a small amount of the surplus stock is but an incident of the general management. We are of the opinion the land so acquired is exempt from taxation.''

Likewise, in *Dries* v. *Charles Evans Cemetery Co.,* 109 Pa. Super. 498 [167 Atl. 237, 238], wherein the cemetery company, a nonprofit organization, was created by a special charter permitting it to own land for ''a burial cemetery'', it was held that the company had the implied power to buy and sell stone vaults to its lot owners, the court saying that ''the essential purpose in the institution of a cemetery and the subsequent conveyance to lot owners is to provide for the burial of the corpse, and the form or material of the container is an incident thereof'' and that ''the cemetery company had a right without profit, to transact, in addition to maintaining their main purposes, such subordinate and connected matters

which fit in essentially or are at least convenient to the due prosecution of the chartered purposes''.

In *State* v. *Lakewood Cemetery,* 197 Minn. 501 [267 N. W. 510], a cemetery corporation whose articles of incorporation permitted the erection of a ''suitable chapel and office building, and *other structures that may be essential or proper for carrying out in the best manner the purposes of the association''* erected a building of which a part was used as a toolhouse, another part as an incinerator, and the remaining portion for the making and storing of wooden and concrete vaults. The court therein gave its approval to these activities in the following language:

''That the actions of the defendant are being performed properly and legally by the defendant, and that the defendant, in engaging in the manufacture and sale to its own lot owners of wooden and concrete burial vaults has been and is acting entirely within its corporate rights and powers.''

Manifestly the operation of a mortuary where bodies are prepared for interment or cremation is a much closer and more intimate incident of burial than the activities above referred to. We therefore, conclude that cemetery lands may be used for such purposes as are incident to the burial of the dead, so long as the rights of the lot owners in their own lots and their rights of egress and ingress are not invaded. (*Vesper* v. *Forest Lawn Cemetery Assn.,* 20 Cal. App. (2d) 157, 163 [67 Pac. (2d) 368] ; *Certia* v. *University of Notre Dame, Du Lac.,* 82 Ind. App. 542 [141 N. E. 318].)

Plaintiff's second contention is that the deed to her two burial lots conveyed to her a restrictive negative easement in all lands retained by the grantor and in the lots to be subsequently conveyed by it to other grantees.

An examination of said deed reveals that two lots were conveyed to Helen S. Wing ''for interment purposes only''. The deed further stated:

''All right, title and interest of said Grantee in and to said premises is, and at all times shall be subject to the following conditions, exceptions, reservations, and restrictions, to-wit:

(a) That said premises shall be used for interment purposes only.''

Following the enumeration of several other such conditions, exceptions, reservations and restrictions is the statement

which forms the principal basis for plaintiff's claim to a restrictive easement and the only portion of said deed which we deem it necessary to discuss:

"This is one of a series of conveyances of like purport and effect, the restrictions, covenants and conditions hereinabove expressed shall be and be deemed to be covenants running with the property and enforceable not only by the cemetery association in charge of said Memorial Park, but also by any individual owner or owners of burial space therein."

It is plaintiff's position that said paragraph indicated that the land was being sold under a common plan—and that it created an equitable easement or servitude in all other lands retained or sold by the defendant cemetery corporations. Defendants contend that the first clause—"This is one of a series of conveyances of like purport and effect"—is merely a recital and not a covenant on the part of the grantor to do or refrain from doing anything; that the next clause—"and the restrictions, covenants and conditions hereinabove expressed shall be and be deemed to be covenants running with the property" refers only to those restrictions imposed on the burial space conveyed to the grantee by the deed; and that the succeeding clause that said restrictions are to be "enforceable not only by the Cemetery Association in charge of said Memorial Park, but also by any individual owner or owners of burial space therein" is solely for the purpose of making the grantee's covenant enforceable not only by the grantor but by the owners of burial space as third party beneficiaries.

Viewing this paragraph in the light of the decisions in this state, it cannot be said that there was thereby created a valid equitable easement in the lands retained by the grantor or to be afterwards conveyed by it.

The law is well settled in California, that the deed is the final and exclusive memorial of the intention and rights of the parties. (*Martin* v. *Holm,* 197 Cal. 733, 742 [242 Pac. 718]; *Werner* v. *Graham,* 181 Cal. 174, 185 [183 Pac. 945]; *Berryman* v. *Hotel Savoy Co.,* 160 Cal. 559, 566 [117 Pac. 677, 37 L. R. A. (N. S.) 5]; *McBride* v. *Freeman,* 191 Cal. 152, 156 [215 Pac. 678].) Furthermore, any provisions of an instrument creating or claimed to create such a servitude will be strictly construed, any doubt being resolved in favor of the free use of the land. (*Werner* v. *Graham,* 181 Cal.

174, 181 [183 Pac. 945] ; *Firth* v. *Marovich,* 160 Cal. 257 [116 Pac. 729, Ann. Cas. 1912D, 1190] ; *Berryman* v. *Hotel Savoy Co.,* 160 Cal. 559 [117 Pac. 677, 37 L. R. A. (N. S.) 5] ; *Bresee* v. *Dunn,* 178 Cal. 96 [172 Pac. 387].)

■ *Werner* v. *Graham,* 181 Cal. 174 [183 Pac. 945], has oft been cited as the leading case in this state defining the manner in which an equitable servitude may be established. That case makes it requisite not only that the deed contain (1) a proper expression of intent to create an equitable easement; that is, reference to a common plan of restriction or indication of an agreement between the grantor and grantee that the conveyed lot be taken subject to some such plan, but also (2) ''some designation or description of what is an essential factor, namely, the dominant tenement''.

Measured by these standards it can scarcely be said that an equitable easement was created by plaintiff's deed. Certainly, there is no description of a dominant tenement which is to be benefited by the restriction placed upon the property of the grantee. The importance of describing with certainty the property to be affected by a restrictive easement has been commented on by Professor William Edward Burby in 10 So. Cal. Law Rev. 281, at page 289, note 21—thusly :

''The desirability of adhering to the rule announced in *Wagner* v. *Hanna* [38 Cal. 111, 99 Am. Dec. 354] (cited in *Werner* v. *Graham, supra,)* in connection with the creation of equitable easements, seems apparent. There should be some written evidence, either in the form of a plat of otherwise, delineating or pointing out the extent of the property affected by the restrictions. A more extensive area is usually involved in the case of equitable easements than is the case in the creation of legally enforceable easements. As a matter of policy, the understanding of the parties should be definite and clear, and should not be left to mere conjecture. Property described in the deed creating the equitable easements, and no other property should be affected thereby.''

■ Clearly, the recital that ''This is one of a series of conveyances of like purport and effect'' designates no dominant tenement, refers to no map, plat or tract or otherwise indicates the location or extent of the land which is to be affected by the restrictions set forth in the grantee's deed to her property. Although the grantor by the terms of said deed imposed numerous restrictions on the lots conveyed to

the grantee, it in nowise bound itself to impose restrictions on any which may have been retained by it, or to convey other property which it may have held subject to the same or similar restrictions or to do anything in favor of the property of the grantee.

A similar situation was presented in the case of *Kuhn* v. *Saum,* 316 Mo. 805 [291 S. W. 104, at p. 105], wherein the Supreme Court of Missouri said:

"The next inquiry is whether the deed from the St. Louis Improvement Company to respondent imposed a negative easement in favor of the grantee on the remaining lands of the grantor, which included the lot subsequently purchased by appellants. In this connection it will be noted that all the covenants in that deed, which may be termed restrictive, were made on the part of the grantee. The grantor made none. That fact, standing alone, shows *prima facie* that the restrictions were imposed solely for the benefit of the grantor's remaining land. Consequently, if the grantor made use of his remaining land which did not conform to such restrictions, his grantee had no ground of complaint. And if the grantee could not compel his grantor to observe the restrictions, he could not compel a subsequent grantee to do so. *Beattie* v. *Howell,* 98 N. J. Eq. 163, 129 A. 822. However, the deed from the St. Louis Improvement Company to respondent expressly provided that the restrictions were made 'for the mutual benefit of all parties purchasing lots by similar conveyances from this grantor'. But the grantor on its part did not covenant to make similar conveyances of the lots, or any of them, and he did not make a similar conveyance to appellants' grantor.''

Therefore, it cannot be said that by the mere imposition of restrictions on the lands of the grantee, the grantor impliedly placed the same restrictions on lands retained by it.

It is true that the deed stated that the restrictions placed on the land of the grantee might be enforced against the land of the grantee by other owners of burial space in Memorial Park, but said statement did not have the effect of creating a reciprocal negative easement. There is no reference to a common plan of restrictions; no indication that one is in existence or no covenant between the grantor and grantee that lots being conveyed by the grantor to the grantee or subsequently to be conveyed to other grantees will be subject to

any such plan and no covenant or warranty can be implied from the mere recital that "This is one of a series of like purport and effect." (*O'Sullivan* v. *Griffith*, 153 Cal. 502, 506 [95 Pac. 873, 96 Pac. 323].)

The recent case of *Moe* v. *Gier*, 116 Cal. App. 403 [2 Pac. (2d) 852], is in point. The owner of a tract of land subdivided it into lots, mapped the same and sold many of the lots. Some of the deeds contained building restrictions and stated that the right to enforce same should "run to each owner of any lot described on the aforesaid map". However, in the words of the court (p. 406):

"Many of the deeds are silent relative to restrictions and except for the provision above set forth as to certain lots, it is not stated that the land conveyed by the deed is a part or portion of a larger tract, or that the restrictions contained in the deeds are for the benefit of other lands, nor was there in any of the deeds any description or designation of the land which was the dominant tenement, nor was there in any of the deeds, any statement that the restrictions imposed upon each or any of the parcels of land were part of a general plan of restriction common to all the parcels in the tract or designed for the mutual benefit of all the parcels contained in the tract, nor was there in any of the deeds any statement that the parcel thereby conveyed should be subject to restrictions in accordance with any plan for the benefit of all other parcels in the tract, or that all other parcels in the tract should be subject to such restrictions for its benefit."

The court therein held that the mere fact that the tract had been subdivided and that some of the deeds contained building restrictions upon the lots therein conveyed, did not impose any such restrictions upon the tract generally, there being no clear expression of any such intended general restriction in said deeds. At page 409, the court said:

"The language in the deeds involved herein did not create equitable servitudes. To create an equitable servitude in the grant of lands in a large area it is essential that there must be a general scheme of restrictions sufficiently uniform in character to indicate unmistakably a designated and adopted plan throughout common to all purchasers of lots. The restrictions must not only appear in one deed, but in all the deeds and must expressly declare that such restrictions are for the benefit of and run with all other lots in the designated

area. In other words, the restrictions must be for the mutual benefit of all parcel owners and each lot imposed with a servitude for the benefit of each and every other lot. [4] It is necessary to state in the deed what is the servient and what is the dominant tenement. (See *Berryman* v. *Hotel Savoy Co.*, 160 Cal. 559 [37 L. R. A. (N. S.) 5, 117 Pac. 677]; *Werner* v. *Graham*, 181 Cal., at 174 [183 Pac. 945]; *McBride* v. *Freeman*, 191 Cal. 152 [215 Pac. 678].) The intent of the parties to create mutual and reciprocal rights of restrictions between the grantees of the original grantor must appear in the deed. (*Gamble* v. *Fierman*, 82 Cal. App., at p. 182 [255 Pac. 269].)''

The strictness of the above rule is regarded as somewhat relaxed by the case of *Martin* v. *Holm*, 197 Cal. 733 [242 Pac. 718]. However, in that case this court held that the deeds and agreements in question expressly contained a covenant on the part of the grantors to subdivide, restricting the entire tract; that the original grantors had in mind a general plan of building restrictions intended for the benefit of all the lots, including their own, that the conveyances which followed each imposed the same or similar restrictions; and that grantees of three lots who took a deed which omitted these restrictions took the same with notice and were bound thereby.

Since, in this case, there is no designation of a dominant tenement and no expression of any general plan of which plaintiff's conveyance is a part, there is no basis for holding that her deed contained a valid equitable easement in the lands retained by or subsequently to have been conveyed by her grantor.

Furthermore, we think it is obvious that plaintiff has alleged no facts satisfactorily showing an irreparable or probable injury which would be necessary in order to justify her demand for defendants to cease doing business.

Plaintiff asserts that she need not plead any monetary damage in order to obtain an injunction against the defendants for the reason that she seeks relief from the violation of a covenant and not from tortious acts, citing as authority the case of *Walker* v. *Haslett*, 44 Cal. App. 394 [186 Pac. 622]. However, inasmuch as we have determined hereinabove that defendants are not violating a restrictive covenant, it is of prime importance that plaintiff allege facts to show wherein she has been or is to be injured by the operation of defendants' mortuary. In the case of *Vesper* v. *Forest Lawn Ceme-*

*tery Assn.*, 20 Cal. App. (2d) 157 [67 Pac. (2d) 368], another owner of burial space sought to enjoin the same defendants from the operation of the identical mortuary involved herein. The court sustained a demurrer to plaintiff's complaint because the plaintiff there involved had likewise failed to allege that he had sustained an injury. We find the language of that case applicable here and quote with approval the following:

"It does not appear either in the original complaint or in the proposed amended complaint that the mortuary can be seen from his lots or that the operation of the mortuary has depreciated the value of his lots, or that upon resale he would suffer loss. Clearly one who has suffered no injury nor damage, nor whose rights have been in anywise invaded, nor who has suffered any interference in his easement, nor who has alleged nor is able to establish that the maintenance of a mortuary impairs the beauty and value of his lot, nor the convenience of ingress to or egress from it, has ground to complain of another, or to enjoin another's acts." And in support of its decision that plaintiff had failed to state a cause of action entitling him to the relief sought, the court said:

"In *Clough* v. *Healy Co.*, 53 Cal. App. 397 [200 Pac. 378], an injunction was refused, the court there saying: 'The right must be clear, and an injunction of the character here in question will be denied where the obstruction does not constitute a material interference with the right of the owner of the easement, or where the damage sustained by him is merely nominal.' "

In this connection we wish to point out that even were we to regard the deed herein as having created a valid equitable easement, its enforcement would have to be governed by equitable principles. It is on this same principle that the courts of this state have relaxed building restrictions where conditions have so changed that to enforce them would work an unreasonable hardship on the owners of property within the restricted area. (*Hess* v. *Country Club Park*, 213 Cal. 613, 619 [2 Pac. (2d) 782], and cases cited.) As stated by Professor William E. Burby, 10 So. Cal. Law Rev. 281, at page 287:

"There is, however, one vital distinction between a legal and an equitable easement. The latter type of burden, being under the exclusive jurisdiction of a court of equity, will not

be considered as *in esse* if, under the facts of a particular case, enforcement would not be in furtherance of public interest. Restrictions will not be enforced if enforcement would be inequitable and unjust. It is not a matter of balancing the equities but, given a case where enforcement would be unjust, it properly may be said that there has been no invasion of any property right. (See 4 Pom. Equit. Jurisprudence [4th ed. 1919], 3958n–3959n.)

 Plaintiff contends that the trial court erred in denying her motion to file her proposed amended complaint. We have examined said complaint and find that it failed in the same respects as the original to state facts sufficient to constitute a cause of action. We shall, therefore, not interfere with said ruling of the trial court, since the privilege of amending a complaint rests in the sound discretion of that tribunal (*Whyte* v. *City of Sacramento,* 65 Cal. App. 534 [224 Pac. 1008]; *Buckley* v. *Howe,* 86 Cal. 596 [25 Pac. 132]; *Hansen* v. *Carr,* 73 Cal. App. 511 [238 Pac. 1048]) and will not be disturbed in the absence of a showing of gross abuse. (*Fetterley* v. *Gibson,* 210 Cal. 282 [291 Pac. 411].)

We have considered the other contentions made by plaintiff and find that they do not require further discussion since they are without merit.

In view of our determination that plaintiff's complaint failed to state a cause of action for injunctive relief and that the trial court did not err in refusing to allow plaintiff to file her proposed amended complaint, the judgment of said court is hereby affirmed.

Shenk, J., Curtis, J., Gibson, J., and Waste, C. J., concurred.

Houser, J., concurred in the judgment.