[Civ. No. 29510. Fourth Dist., Div. Two. Feb. 3, 1984.]

ROBERT MACKINDER et al.,
Plaintiffs, Cross-defendants and Appellants, v.
OSCA DEVELOPMENT COMPANY,
Defendant, Cross-complainant and Appellant.

the meaning of Civ. Code, § 1717. (Opinion by Kaufman, J., with Morris, P. J., and McDaniel, J., concurring.)

730

---

Elliot S. Berkowitz for Plaintiffs, Cross-defendants and Appellants.

Erwin & Anderholt and Douglas S. Phillips for Defendant, Cross-complainant and Appellant.

## OPINION

**KAUFMAN, J.**—Defendant OSCA Development Company (OSCA), doing business as Desert Crest Country Club, initiated a small claims action against plaintiffs Robert and Edna Mackinder for fees allegedly due pursuant to a recorded declaration of restrictions. Plaintiffs, contending an earlier small claims judgment was res judicata and the declaration of restrictions does not apply to them, filed in the Riverside Superior Court the instant action for malicious prosecution, abuse of process, negligent infliction of emotional distress, and injunctive relief. OSCA cross-complained for declaratory relief and for recovery of the fees allegedly due pursuant to the declaration of restrictions together with attorney fees. The trial court gave judgment for OSCA but declined to award OSCA attorney fees notwithstanding that the declaration of restrictions provides for the recovery of attorney fees. OSCA appeals, contending it is entitled to an award of attorney fees; the Mackinders appeal from the judgment in favor of OSCA.

### Facts

OSCA, doing business as Desert Crest Country Club, operates a mobilehome country club in Desert Hot Springs. In 1971, the developer recorded a "Declaration of Restrictions" which applied to the whole subdivision of tract 4064, the mobilehome tract here in question.

In 1972, lot 4 of the tract was sold. This was the first lot to be sold after the recordation of the declaration of restrictions. The deed to lot 4 incorporated the declaration of restrictions by reference.

On February 19, 1976, plaintiffs purchased lot 37 of tract 4064 for the purpose of placing a mobilehome on the property. The deed to lot 37 incorporated the declaration of restrictions by reference. Lot 37, however, was too small to accommodate plaintiffs' mobilehome. Plaintiffs then came to an agreement with Desert Empire Bank to trade lot 37 for lot 46 of the development. On June 17, 1976, in completion of the agreement, Desert Empire Bank executed a grant deed to lot 46 to the plaintiffs. The deed to lot 46 made no reference to the declaration of restrictions.

The declaration of restrictions includes a provision in paragraph 19 for the payment of monthly dues by members of Desert Crest Community As-

sociation for use of the club facilities.[1] One of the functions of OSCA is the collection of the club dues.

On April 1, 1976, about a month and a half after plaintiffs purchased lot 37, the park's office manager sent plaintiffs copies of the association bylaws, the declaration of restrictions, architectural guidelines and the clubhouse rules and regulations. On May 2, 1976, Robert Mackinder wrote to the office manager acknowledging receipt of the papers. The letter explained the problem that lot 37 was too small for the Mackinders' mobilehome, and the proposed solution to exchange lot 37 for lot 46. The exchange transaction had not yet been consummated. In addition, Robert Mackinder specifically inquired whether any dues were owed for the first year. On May 17, 1976, the office manager sent a reply to the plaintiffs stating that club dues of $26.75 per month were owed for March, April and May. Robert Mackinder responded by letter on May 23, 1976, and stated with respect to the club dues that "as soon as escrow closes with [respect to the exchange of Lot 46] I intend to pay my proper obligations . . . ."

In the meantime, an escrow was opened with Delta Escrow Company on May 7, 1976, for the transfer of lot 46 to the plaintiffs. Safeco Title Insurance Company issued a preliminary title insurance report for lot 46. The preliminary title insurance report, addressed to Delta Escrow, excepted from coverage the "Covenants, conditions and restrictions set forth in a declaration recorded August 12, 1971 as Instrument No. 91106. Said declaration includes the right to assess annual lot charges." The preliminary title report was mailed to Delta Escrow on or about June 3, 1976.

On June 17, 1976, Desert Empire Bank executed a grant deed to lot 46 to the plaintiffs. The grant deed made no reference to the declaration of restrictions. On July 1, 1976, Safeco Title Insurance Company issued the policy of title insurance for lot 46. The title insurance policy excluded from

---

[1]Paragraph 19 of the declaration of restrictions provides in pertinent part as follows: "19. All Community Areas . . . shall remain the property of Desert Crest Hot Springs. Desert Crest Hot Springs shall maintain and care for such Community Areas, and shall install and maintain such improvements, planting, and landscaping on such portions of said subdivision as Desert Crest Hot Springs shall deem desirable. Members of the Desert Crest Community Association shall have the right, by the payment of fees as set forth below, to use the facilities of Desert Crest Hot Springs in accordance with the rules and regulations as set forth by said Desert Crest Hot Springs. [¶] Members of the Desert Crest Community Association shall pay to Desert Crest Hot Springs, as compensation for the privileges herein granted and for the services furnished or secured by Desert Crest Hot Springs, such amount as may be assessed ratably against said member by Declarant each month, provided, however, that the aggregate amount as assessed per member shall not at any time exceed Two Hundred Sixteen Dollars ($216.00) per year, provided that this maximum may be increased by Desert Crest Hot Springs in the same proportion as the cost of living index of the United States Department of Labor increases above such index on the date of recording these restrictions."

coverage the "Covenants, conditions and restrictions set forth in a declaration recorded August 12, 1971 as Instrument No. 91106. Said declaration includes the right to assess annual lot charges." Plaintiffs recorded their deed to lot 46 on July 1, 1976. The policy of title insurance, however, was not forwarded to the plaintiffs until October 8, 1976.

On August 14, 1976, both plaintiffs executed, in the presence of two witnesses who also signed the document, a document issued by the Desert Crest Community Association. The document stated, "I have received a copy of the Declaration of Restrictions, understand them, and agree to abide by them." On the same day, both plaintiffs executed, in the presence of a notary public who notarized their signatures, a membership application in the Desert Crest Community Association. The membership application recites: "I have received copies of . . . the Declaration of Restrictions . . . and agree to follow and abide by their provisions or such changes to these provisions which may be enacted and approved in a proper manner by the members of this Association."

On August 28, 1976, Robert Mackinder mailed a letter to the office manager which stated: "In regards to club dues that you so wrongfully state are in arrears, may I please call your attention to the fact that no papers were signed by myself or my wife until the 14th day of August, 1976 and therefore we are not responsible or liable, only for the month beginning in August. [¶] So if you will please correct your records accordingly, I will send the current and only amount due: $26.75."

As of September 1, 1976, plaintiffs had paid no dues. A small claims action was filed against plaintiffs to recover club dues for the months of March through and including September of 1976. Plaintiffs were duly served, and a hearing was had on October 4, 1976. The trial court ruled in favor of the Mackinders that the plaintiff should take nothing by reason of its complaint on the small claims action. The small claims judgment was not appealed or challenged in any way.

Between November 22, 1976, and August 20, 1978, plaintiffs paid club dues on the following dates and in the following amounts:

| | |
|---|---|
| 11/22/76 | $28.50 |
| 12/24/76 | $28.50 |
| 2/6/77 | $28.50 |
| 3/20/77 | $28.50 |
| 4/24/77 | $28.50 |
| 5/14/77 | $57.00 |
| 6/12/77 | $28.50 |
| 7/10/77 | $28.50 |

| | |
|---|---|
| 10/30/77 | $57.50 |
| 11/27/77 | $28.50 |
| 12/25/77 | $60.00 |
| 2/1/78 | $30.00 |
| 4/9/78 | $30.00 |
| 5/29/78 | $60.00 |
| 8/20/78 | $60.00 |

Plaintiffs paid no club dues since the payment made on August 20, 1978. The park management sent several letters from 1978 to 1980 to the plaintiffs regarding club dues arrearages. On July 3, 1980, OSCA filed another small claims action against the plaintiffs, seeking payment of the club dues.

Plaintiffs countered by filing the instant action for malicious prosecution, abuse of process, negligent infliction of emotional distress and for injunctive relief. Plaintiffs alleged the earlier small claims action was res judicata against the later claims for dues arrearages. OSCA then cross-complained for declaratory relief and for damages. The trial court awarded judgment to OSCA on both the complaint and the cross-complaint, including recovery of the club dues, but refused to award attorney fees to OSCA.

### Contentions of the Parties

The essence of plaintiffs' position is that their deed to lot 46 contained no reference to the declaration of restrictions, and they had no notice of the declaration of restrictions; therefore, they were not liable for the dues. They contend the original small claims judgment was made on that basis, and the former small claims judgment is therefore res judicata on the issue. Plaintiffs argue, in addition, it was an abuse of process for OSCA to file the small claims action in a county where plaintiffs did not reside. Finally, plaintiffs contend the declaration of restrictions is not a contract; thus, no attorney fees may be awarded pursuant to Civil Code section 1717.

OSCA contends plaintiffs were bound by the declaration of restrictions to pay the club dues, and that it was entitled to an award of attorney fees.[2]

---

[2]The parties have framed their arguments on the declaration of restrictions narrowly. Plaintiffs contend the declaration of restrictions must appear in their deed and they had no notice of the restrictions. OSCA argues the restrictions need not be incorporated in plaintiffs' deed and plaintiffs had actual and constructive notice of the declaration of restrictions. The parties apparently assume that OSCA is the proper successor to the original developer, who recorded the declaration of restrictions, for purposes of enforcement. The parties also seem to assume the Mackinders succeeded to a property that was originally sold after the sale of lot 4 in 1972. There is no argument, and no evidence to show, for example, lot 46 was originally sold before the declaration of restrictions was recorded (see *Riley* v. *Bear Creek Planning Committee* (1976) 17 Cal.3d 500 [131 Cal.Rptr. 381, 551 P.2d 1213]), or that the Mackinders' title derives from one whose interest was not subject to the declaration of restrictions (see *Sain* v. *Silvestre* (1978) 78 Cal.App.3d 461 [144 Cal.Rptr. 478]). In view of the parties' proceeding on these assumptions and the absence of anything to the contrary in the record, we proceed on the same assumptions.

## Res Judicata

■ Plaintiffs argue the first small claims judgment was rendered in their favor *because* the court found the declaration of restrictions inapplicable, because not incorporated by reference in their deed. The record is silent on the reason for the first small claims judgment, and therefore it cannot be given res judicata effect on the issue of the applicability of the declaration of restrictions to plaintiffs' property. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 152, pp. 3298-3299, and cases cited.) Moreover, judgments of the small claims court have limited res judicata effects. (*Sanderson* v. *Niemann* (1941) 17 Cal.2d 563, 573-575 [110 P.2d 1025]; see also *Perez* v. *City of San Bruno* (1980) 27 Cal.3d 875, 884 [168 Cal.Rptr. 114, 616 P.2d 1287].) Here, as in *Sanderson,* the cause of action is not the same: the dues claimed are for a different period of time and with respect to a different lot. Merger and bar are therefore inapplicable and there is no collateral estoppel. (*Ibid.*)

## The Declaration of Restrictions

■ Plaintiffs contend the declaration of restrictions does not apply to them because the declaration of restrictions is not incorporated in their deed to lot 46.

Plaintiffs' contention is incorrect. The rule of law for valid creation of an equitable servitude is plain. ■ "It is undoubted that when the owner of a subdivided tract conveys the various parcels in the tract by deeds containing appropriate language imposing restrictions on each parcel as part of a general plan of restrictions common to all the parcels and designed for their mutual benefit, mutual equitable servitudes are thereby created in favor of each parcel as against all the others. The agreement between the grantor and each grantee in such a case as expressed in the instruments between them is both that the parcel conveyed shall be subject to restrictions in accordance with the plan for the benefit of all the other parcels and also that all other parcels shall be subject to such restrictions for its benefit. In such a case the mutual servitudes spring into existence as between the first parcel conveyed and the balance of the parcels at the time of the first conveyance. As each conveyance follows, the burden and the benefit of the mutual restrictions imposed by preceding conveyances as between the particular parcel conveyed and those previously conveyed pass as an incident of the ownership of the parcel, and similar restrictions are created by the conveyance as between the lot conveyed and the lots still retained by the original owner." (*Werner* v. *Graham* (1919) 181 Cal. 174, 183-184 [183 P. 945].) The mutual equitable servitudes so created are valid as to lots sold later even though the restriction does not appear in the deed of the parcel sold later.

"From the recordation of the first deed which effectively imposes restrictions on the land conveyed and that retained by the common grantor, the restrictions are binding upon all subsequent grantees of parcels so affected who take with notice thereof *notwithstanding that similar clauses have been omitted from their deeds.*" (*Riley* v. *Bear Creek Planning Committee* (1976) 17 Cal.3d 500, 507 [131 Cal.Rptr. 381, 551 P.2d 1213], italics added.)

 In the instant case, the declaration of restrictions was recorded against the entire tract in 1971. The developer sold lot 4, expressly subject to the declaration of restrictions, in 1972. When the deed to lot 4 was recorded, an equitable servitude sprang into existence between lot 4 and all the other remaining unsold lots. "While the recorded declaration of restrictions should be incorporated by reference in each deed, this is not a fatal omission provided that the recorded restrictions are incorporated by reference in the first deed and provided that the subsequent grantees of the remaining lots in the tract take title to their lots with notice, actual or constructive, of the recorded declaration of restrictions." (*Sain* v. *Silvestre, supra,* 78 Cal.App.3d 461, 467.)

None of the cases cited by plaintiffs vary from these principles. The cases clearly do not require the declaration of restrictions to be incorporated in plaintiffs' deed to be valid against them. Plaintiffs have been able to maintain otherwise only by selective reading and misconstruction of the cases.[3]

Plaintiffs argued below and reassert on appeal, that even if the declaration of restrictions need not be incorporated by reference in their deed, they had neither actual nor constructive notice of the declaration of restrictions. Plaintiffs' contention is disingenuous at best. The first lot plaintiffs purchased, lot 37, incorporated the declaration of restrictions by reference. The park manager sent a copy of the declaration of restrictions to plaintiffs in April of 1976. Plaintiffs acknowledged receiving it. After the exchange of lot 37 for lot 46, plaintiffs signed a membership application, and another document, both of which acknowledged receipt of a copy of the declaration of restrictions, and stated that plaintiffs agreed to abide by the declaration

---

[3]Equitable servitudes were found not to be validly created in *Werner* v. *Graham, supra,* 181 Cal. 174, *Murry* v. *Lovell* (1955) 132 Cal.App.2d 30 [281 P.2d 316], *Wing* v. *Forest Lawn Cemetery Assn.* (1940) 15 Cal.2d 472 [101 P.2d 1099, 130 A.L.R. 120], and *Riley* v. *Bear Creek Planning Committee, supra,* 17 Cal.3d 500.

In *Werner,* the grantor did not use appropriate language to show a common plan was intended to apply between all the lots. In *Murry,* although the owner told the parties about a recorded set of restrictions, the restrictions were never incorporated in any deed. The grantor in *Wing* failed to refer to a common plan of restrictions or to indicate such a plan existed, and failed to describe any dominant tenement. Finally, in *Riley* the declaration of covenants, conditions and restrictions was invalid as against a lot that had been sold *before* the CC&R's were recorded. None of these situations is applicable here.

of restrictions. After termination of the first small claims action in plaintiffs' favor, plaintiffs received from the escrow company the title insurance policy on lot 46 which expressly excluded the covenants, conditions and restrictions. Finally, plaintiffs actually paid the club dues for nearly two years from November 1976 through June 1978. Plaintiffs obviously had actual notice of the declaration of restrictions, and to contend otherwise comes dangerously close to attempting to mislead the court.

The equitable servitude here was properly created according to the classic statement in *Werner* v. *Graham.* The owner recorded the declaration of restrictions against the tract. By deeds containing appropriate language imposing the restrictions on each parcel as part of a general plan common to all the parcels and designed for their mutual benefit, the owner created mutual equitable servitude in favor of each parcel as against all the others. The mutual equitable servitudes sprang into existence as between the first parcel conveyed and the balance of the parcels at the time of the first conveyance. The restrictions are binding upon plaintiffs, who had actual and constructive notice of the restrictions, even though the restrictive clause was omitted from their deed.

The trial court properly ruled plaintiffs were bound by the declaration of restrictions, and properly awarded judgment to OSCA for the payment of the club dues.

### Abuse of Process

Plaintiffs make the claim the filing of the second small claims action was an abuse of process because it was filed in Riverside County when plaintiffs are residents of Los Angeles County. Plaintiffs' argument is without merit. OSCA's selection of Riverside County as the venue for the small claims action was not plainly improper. ■ The county in which real property is located is a proper venue for actions to determine in any form any right to an estate or interest in the real property. (Code Civ. Proc., § 392.) Moreover, "when a defendant has contracted to perform an obligation in a particular county, either the county where such obligation is to be performed or in which the contract in fact was entered into or the county in which the defendant or any such defendant resides at the commencement of the action shall be a proper county for the trial of an action founded on such obligation . . . ." (Code Civ. Proc., § 395, subd. (a).)

Even assuming the venue was improper, Code of Civil Procedure section 396b provides: "the action may, notwithstanding, be tried in the court where commenced, unless the defendant . . . files . . . a notice of motion

for an order transferring the action or proceeding to the proper court . . . ." Plaintiffs never moved to change the venue of either small claims action.

This is not a case in which a claimant has deliberately selected an improper forum and given inadequate pleadings in a systematic effort to obtain settlements or default judgments. (See *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94 [101 Cal.Rptr. 745, 496 P.2d 817].) Plaintiffs' abuse of process theory is devoid of merit.

*Attorney Fees*

■ The trial court found plaintiffs bound by the declaration of restrictions but nevertheless refused to award attorney fees to OSCA.

The declaration of restrictions includes a provision for attorney's fees. "24. In the event of any violation or threatened violation of any of the covenants herein, the Declarant or any owner of any lot, block or parcel in the subdivision may bring action at law or in equity, either for injunction, action for damages or such other remedy as may be available. In the event the Declarant recovers judgment against any person for a violation or threatened violation of any of the covenants herein, the Declarant shall also be entitled to recover from such person reasonable attorneys' fees." The ostensible reason for the failure to award attorney fees is that the declaration of restrictions is an equitable servitude, not a contract and plaintiffs assert the existence of a contract is a prerequisite to the recovery of attorney fees under Civil Code section 1717.[4]

There are two answers to plaintiffs' contention. First, OSCA's right to attorney fees is not dependent on Civil Code section 1717. Plaintiffs are bound by all provisions of the declaration of restrictions including the provision for attorney fees, without regard to whether the declaration of restrictions constitutes a technical "contract." Secondly, provision for attorney fees in a declaration of restrictions constituting a binding equitable servitude is a "contract" within the meaning of Civil Code section 1717.

The California Supreme Court held in *Stout* v. *Turney* (1978) 22 Cal.3d 718 [150 Cal.Rptr. 637, 586 P.2d 1228], that a tort action for fraud arising out of a contract is not an action " 'on a contract' " within the meaning of

---

[4]Civil Code section 1717 provides in pertinent part as follows: "(a) In any action *on a contract,* where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements." (Italics added.)

section 1717. (*Id.,* at p. 730.) Thus, the distinction is drawn between cases which may be characterized as based in tort (ex delicto), and those arising broadly out of contract or agreement (ex contractu). The reciprocity provision of Civil Code section 1717 has in fact been applied in a number of cases not technically based on a "contract" but ex contractu in nature.

The court in *Schoolcraft* v. *Ross* (1978) 81 Cal.App.3d 75 [146 Cal.Rptr. 57] stated: "Defendant Ross asserts . . . that the suit was on an implied covenant and not on a contract . . . . We disagree. Defendant Ross' contentions are without merit. The action is based upon the deed of trust and is a contract action within Civil Code section 1717." (*Id.,* at p. 82.)

In *Saucedo* v. *Mercury Sav. & Loan Assn.* (1980) 111 Cal.App.3d 309 [168 Cal.Rptr. 552], this court held that a nonassuming grantee of property encumbered by a deed of trust is entitled to recover attorney fees under Civil Code section 1717 pursuant to an attorney fees provision in the deed of trust. To like effect is *Wilhite* v. *Callihan* (1982) 135 Cal.App.3d 295, 301 [185 Cal.Rptr. 215].

Finally, even though the defendants in *Sain* v. *Silvestre, supra,* 78 Cal.App.3d 461, could not be awarded attorney fees pursuant to the declaration of restrictions there involved because their title derived from one who was not a party or subject to the declaration of restrictions provisions, the court nevertheless held the request for attorney fees pursuant to the attorney fees provision of the declaration of restrictions was "controlled by the provisions of Civil Code section 1717." (*Id.,* at p. 475.) Regardless of the form of the instrument, whether by contract, deed, or binding equitable servitude, an instrument containing a provision for the recovery of attorney fees in the event of litigation is governed by the reciprocity provisions of Civil Code section 1717.

OSCA should have been awarded reasonable attorney fees.

■ A provision in an agreement for attorney fees also encompasses attorney fees on appeal. ■ Although this court possesses the power to appraise and fix attorney fees on appeal, the better practice is to remand the cause to the trial court for the determination of such fees. (*Arenson* v. *National Auto & Cas. Ins. Co.* (1957) 48 Cal.2d 528, 540 [310 P.2d 961]; *Genis* v. *Krasne* (1956) 47 Cal.2d 241, 248 [302 P.2d 289]; *Clejan* v. *Reisman* (1970) 5 Cal.App.3d 224, 241 [84 Cal.Rptr. 897].)

*Disposition*

The cause is remanded to the trial court for a proper determination and addition to the judgment of reasonable attorney fees to be awarded OSCA,

including a reasonable sum on account of its attorney fees on appeal. In all other respects the judgment is affirmed.

Morris, P. J., and McDaniel, J., concurred.