[No. B127215. Second Dist., Div. Six. July 8, 1999.]

In re the Marriage of PATRICIA ESTHER and WALTER RAYMOND RICH.
WALTER RICH, Appellant, v.
SOUTHERN CALIFORNIA IBEW-NECA PENSION PLAN, Respondent.

COUNSEL

Lascher & Lascher and Gabriele Mezger-Lashly for Appellant.

Kissane & Cook, Melissa W. Cook and Tiffany D. Lena for Respondent.

**OPINION**

**GILBERT, Acting P. J.**—Husband has a pension plan governed by the Employee Retirement Income Security Act (ERISA). The plan entitles him to a monthly sum for the rest of his life. Pursuant to a qualified domestic

relations order (QDRO), wife receives her community portion of the monthly payment for her life. Here we hold that upon wife's death, husband receives the full amount of the pension payments.

The trial court erred when it denied husband's motion to clarify the QDRO to reflect his entitlement to the full payment.

## FACTS

Walter Raymond Rich, a union member, worked as an electrician for 25 years. During this time he became a vested participant in the union's pension plan. The plan was governed by ERISA. (29 U.S.C. § 1001 et seq.)[1]

Walter chose the "Normal Pension Form" offered by the plan.[2] The summary plan description describes the normal pension form as follows: "Your benefit amount as calculated in Answer 4 is paid to you for your lifetime, with 60 months guaranteed. If you die before 60 months are paid, the balance of the 60 months are paid to your designated beneficiary, and then stop. If you designate someone other than your spouse as beneficiary, your spouse must provide written consent. If you receive at least 60 months of benefits, the pension will stop with your death."

Answer 4, referred to in the plan summary, describes the method for calculating a participant's monthly payout. It is undisputed that under the calculation described in answer 4, Walter was entitled to $962 per month.

For 20 of the 25 years that Walter worked, he was married to Patricia. In April of 1987, the couple joined the pension plan trust fund in the action to dissolve their marriage. The parties entered into a QDRO for the distribution of the pension benefits. The order provided in part:

"1. The 'Claimant' [trust fund] shall, at such time as Retirement Benefits are properly vested and payable under its Plan, and are properly subject to division, forward such Retirement Benefits payable as follows:

"(a) First, 'Claimant' shall reduce the total Retirement Benefits otherwise available by the sum of five dollars ($5.00) per month to be retained by 'Claimant' to recompense it for the additional expenses of administration occasioned by its division of Retirement Benefits between the parties;

"(b) Second, the remaining community portion of the monthly Retirement Benefit available for division shall be paid as follows:

---

[1] All statutory references are to title 29 of this code.
[2] We refer to the parties by their first names to ease the reader's burden.

"i) A check payable to Petitioner, PATRICIA ESTHER RICH in an amount equal to 50% of the remaining 'Community' Retirement Benefit to be divided; and,

"ii) A check payable to Respondent, WALTER RAYMOND RICH in an amount equal to 50% of the remaining 'Community' Retirement Benefit to be divided."

The order calculated that Patricia would receive $447.87 per month as her share and Walter would receive $509.13 per month as his share. The order stated, "Such payments will continue until the earlier of the Participant Respondent's death or the Alternate Payee Petitioner's death."

Patricia died in March of 1997, survived by Walter. Walter contacted the trust fund to have the entire $962 pension payment paid to him. The trust fund refused, claiming that the $447.87 per month ordered to be paid to Patricia had terminated.

Walter brought the instant motion to modify or clarify the QDRO. In support of his motion, Walter declared that he always believed that if his former wife predeceased him his pension benefits would be restored. He also declared that his daughter made a claim against the trust fund as Patricia's executor. The trust fund responded that the benefits stopped at her mother's death.

In opposition to Walter's motion, the trust fund's attorney declared that, "Upon the death of the former Mrs. Rich and pursuant to the PLAN provisions, the pension benefit ceased." The attorney also declared that the plan did not provide for a "pop-up benefit," that is, an increase in the pension payment, upon the death of Walter's former spouse.

The trial court denied Walter's motion. The court stated the benefits were Patricia's separate interest and there was no reversion to Walter upon Patricia's death.

DISCUSSION

I

■ According to the plan summary, Walter is entitled to $962 per month for the rest of his life with a minimum of 60 months. The trust fund points to nothing in the plan that authorizes the payment of any lesser amount for any lesser duration. More particularly, the plan does not authorize a reduction in payments upon the death of Patricia.

If any reduction in the amount of payments to Walter is authorized, it must be by the QDRO. Because the pension is governed by ERISA, state laws relating to employee benefit plans are preempted. (§ 1144(a).) Originally there was a question whether the preemption prohibited the treatment of pension benefits as community property. (See *In re Marriage of Shelstead* (1998) 66 Cal.App.4th 893, 899 [78 Cal.Rptr.2d 365].) The question arose out of ERISA's general ban on the ability of plan participants to assign or alienate their benefits under the plan. (§ 1056(d)(l).)

In 1984 Congress clarified the point by amending ERISA. It declared that transfers between spouses in divorce actions were prohibited alienations. (§ 1056(d)(3)(A).) But Congress also provided that the prohibition on alienation did not apply to a QDRO. (*Ibid.*) The result is that a nonparticipant spouse has no community ownership of the right to pension benefits unless the right is transferred by a QDRO. (*In re Marriage of Shelstead, supra,* 66 Cal.App.4th at p. 900, citing Summers, *ERISA Preemption of "Direct" and "Indirect" Community Property Interests in Pension Plans Upon the Non-Participant Spouse's Death* (1994) 55 La. L.Rev. 409, 438.)

Thus whatever interest in the pension the QDRO did not assign to Patricia remains with Walter. The parties spend much effort arguing whether the pension benefit itself or only the payments were assigned. The distinction is irrelevant. Whatever was assigned, the QDRO provides that payments to Patricia will cease upon her death. There is no further assignment of any interest. Although the payments made pursuant to the QDRO ended with Patricia's death, the trust fund's obligation to pay $962 per month did not. The plan itself requires full payment to Walter until his death.

There is no merit to the trust fund's contention that Walter is seeking a pop-up benefit. That is a benefit available to a surviving participant spouse in a wholly different plan, the joint and survivor pension. But for the QDRO, Walter is entitled to the full benefit payment under his normal pension plan. Now that the assignment made by the QDRO has expired, Walter is again entitled to the full amount of the payment. Nor did the QDRO purport to increase the benefit under the plan. The plan was always required to pay $962 per month. The trust fund has pointed to nothing in the plan or the QDRO that allows it to keep any of that money.

## II

The trust fund contends Walter failed to exhaust his administrative remedies. The plan provides for an appeal from a decision of the plan administrator to the trustees.

 ERISA requires a plan participant to avail himself of the plan's own internal review procedures before bringing suit. (*Diaz* v. *United Agr. Employee Welf. Benefit Plan* (9th Cir. 1995) 50 F.3d 1478, 1483.) An exception to the exhaustion requirement arises where an administrative review would be futile; that is, where an administrative review is "demonstrably doomed to fail." (*Id.*, at p. 1485.)

Here the trial court found an attempt to exhaust administrative remedies would be futile. That the trust fund opposed Walter's motion on substantive grounds supports the trial court's conclusion. That the trust fund continues to oppose Walter on substantive grounds on appeal confirms the trial court's conclusion.

### III

Walter requests an award of attorney's fees. ERISA gives the court discretion to award attorney's fees in an action to enforce or clarify rights under the plan. (§ 1132.) Such a request is better decided by the trial court. (See *Mackinder* v. *OSCA Development Co.* (1984) 151 Cal.App.3d 728, 739 [198 Cal.Rptr. 864].) We deny the request without prejudice.

The judgment (order) is reversed. The trial court is ordered to direct defendant pension plan to restore to Walter his full benefits of $962 per month. Costs are awarded to appellant.

Yegan, J., and Coffee, J., concurred.